# NOTICE:   SLIP OPINION
## (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.



FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE MAY 0 7 2015
CHIEF JUSTICE

This opinion was filed for record
at 8:00Am on May 7, 2015

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| In the Matter of the Personal Restraint of | ) ) ) ) | No. 88770-5 (consolidated with No. 89992-4) |
| YUNG-CHENG TSAI, | ) ) | |
| Petitioner. | ) ) | |
| | ) | EN BANC |
| In the Matter of the Personal Restraint of | ) ) ) | |
| | ) | Filed: MAY 0 7 2015 |
| MUHAMMADOU JAGANA, | ) ) | |
| Petitioner. | ) ) | |

YU, J.—As applied to Washington, the holding in *Padilla v. Kentucky,* 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010) is an affirmation of an old rule of state constitutional law— the duty to provide effective assistance of counsel includes the duty to reasonably research and apply relevant statutes. However, language in certain Washington appellate cases made it appear that this well-

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

established rule did not apply to RCW 10.40.200. In superseding those cases, *Padilla* significantly changed state law.

Muhammadou Jagana raises a claim that would have been rejected before *Padilla* based on those superseded appellate cases. We therefore reverse the Court of Appeals' order dismissing Jagana's personal restraint petition (PRP) and remand to the trial court for an evidentiary hearing. However, Yung-Cheng Tsai's claim was available before *Padilla*, and Tsai did in fact raise his claim with the assistance of an attorney in 2008. That motion was denied based on an issue of law not affected by *Padilla*, and Tsai did not appeal. We therefore affirm the Court of Appeals' order dismissing Tsai's PRP.

## FACTUAL AND PROCEDURAL HISTORY

A.   Yung-Cheng Tsai

On July 27, 2006, Tsai pleaded guilty to one count of unlawful possession of a controlled substance with intent to deliver (marijuana). On August 29, 2006, the trial court sentenced him to 11 months in jail and 12 months of community custody. Tsai did not appeal. On or about October 30, 2007, Tsai received a notice to appear from the United States Immigration and Naturalization Services, which informed him that he was subject to removal (also known as deportation) based on his conviction.

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

On July 21, 2008, Tsai filed a motion to withdraw his guilty plea under CrR 7.8, alleging that his attorney wrongfully advised him he would not be deportable if he accepted the State's plea offer and that this erroneous advice was prejudicial. The trial court denied Tsai's motion as time barred. The motion was filed over one year after Tsai pleaded guilty, and the trial court held that equitable tolling did not apply. The trial court did not transfer Tsai's motion to the Court of Appeals for consideration as a PRP. Tsai did not appeal or otherwise pursue his 2008 motion.

On May 18, 2011, Tsai again moved to withdraw his guilty plea under CrR 7.8 based on his attorney's alleged erroneous advice. Tsai argued his motion was exempt from the one-year time bar in RCW 10.73.090(1) under RCW 10.73.100(6) because *Padilla* and *State v. Sandoval*, 171 Wn.2d 163, 249 P.3d 1015 (2011) (applying *Padilla*) effected a significant, material change in the law that applies retroactively.

The trial court initially denied Tsai's 2011 motion, holding it was time barred. On Tsai's motion, the trial court vacated its holding and transferred the motion to the Court of Appeals to be considered as a PRP. The Court of Appeals denied Tsai's PRP as time barred, holding that *Padilla* and *Sandoval* do not apply retroactively. We granted Tsai's motion for discretionary review and consolidated his case with Jagana's. *In re Pers. Restraint of Yung-Cheng Tsai*, 180 Wn.2d 1014, 327 P.3d 55 (2014).

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

B.    Muhammadou Jagana

On June 7, 2006, Jagana pleaded guilty to one count of possession of a controlled substance (cocaine). He was sentenced to three months of electronic home monitoring. Jagana did not appeal.

On November 4, 2010, Jagana moved to withdraw his guilty plea under CrR 7.8. Relying on *Padilla*, Jagana asserted that his attorney failed to investigate Jagana's immigration status, did not advise him that his guilty plea could have immigration consequences, and did not advise him to speak with an immigration attorney. The trial court transferred Jagana's motion to the Court of Appeals to be considered as a PRP.

The Court of Appeals initially filed a published opinion holding Jagana's PRP was timely under RCW 10.73.100(6) and remanding the case to the trial court for a reference hearing. *In re Pers. Restraint of Jagana*, 170 Wn. App. 32, 282 P.3d 1153 (2012). The Court of Appeals reasoned that *Padilla* was a significant, material change in the law and that *Padilla* should apply retroactively because it was not a new rule; it merely applied the standard analysis for ineffective assistance of counsel to a new set of facts.

The State sought discretionary review, and we remanded to the Court of Appeals for reconsideration in light of *Chaidez v. United States*, 568 U.S. ___, 133 S. Ct. 1103, 1107, 185 L. Ed. 2d 149 (2013), which held *Padilla* did announce a

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

new rule that does not apply retroactively to matters on collateral review. *In re Pers. Restraint of Jagana*, 177 Wn.2d 1027, 309 P.3d 1186 (2013). On reconsideration, the Court of Appeals withdrew its opinion and dismissed Jagana's PRP as time barred. We granted Jagana's motion for discretionary review and consolidated his case with Tsai's. *In re Pers. Restraint of Jagana*, 180 Wn.2d 1014, 327 P.3d 55 (2014).

## ISSUES

A. Are the PRPs exempt from the one-year time bar in RCW 10.73.090(1) under RCW 10.73.100(6)?

B. If the PRPs are not time barred, are the petitioners entitled to relief or evidentiary hearings on the merits of their claims?

## ANALYSIS

A. As applied to Washington, *Padilla* did not announce a new rule, but it did effect a significant change in the law under RCW 10.73.100(6)

1. The unreasonable failure to give any advice about the immigration consequences of a guilty plea was already deficient performance in Washington under the ordinary *Strickland* test

A criminal defendant's right to the assistance of counsel derives from the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution. Under these provisions, a criminal defense attorney has the constitutional duty to provide assistance that is effective. *Strickland v.*

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Where a defense attorney makes "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," the attorney's performance is constitutionally deficient. *Id.* at 687. Where that deficiency deprives the defendant of fair proceedings, the defendant has suffered prejudice because there is "a breakdown in the adversary process that renders the result unreliable." *Id.* Unreliable results caused by defense counsel's prejudicially deficient performance are constitutionally intolerable.

When determining whether a defense attorney provided effective assistance, the underlying test is always one of "reasonableness under prevailing professional norms." *Id.* at 688. While simple to state in theory, this test can be complicated to apply in practice. The court must engage in a fact-specific inquiry into the reasonableness of an attorney's actions, measured against the applicable prevailing professional norms in place at the time. *Id.* at 690. It is thus impossible to "exhaustively define the obligations of counsel [ ]or form a checklist for judicial evaluation of attorney performance." *Id.* at 688. Nevertheless, effective representation "entails certain basic duties," such as

> a duty of loyalty, a duty to avoid conflicts of interest[,] . . . the overarching duty to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution. Counsel also has a duty to bring to bear

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

such skill and knowledge as will render the trial a reliable adversarial testing process.

*Id.*

It is against this backdrop that we consider whether *Padilla* applies retroactively under RCW 10.73.100(6) and *Teague v. Lane*, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989). Under *Teague*, new constitutional rules of criminal procedure usually apply only to matters on direct review, but old rules apply to matters on both direct and collateral review. *Whorton v. Bockting,* 549 U.S. 406, 416, 127 S. Ct. 1173, 167 L. Ed. 2d 1 (2007). Because it is impossible to exhaustively define a defense attorney's obligations under *Strickland*, cases that merely apply the ordinary test for ineffective assistance of counsel to new facts do not announce new rules for *Teague* purposes. *Chaidez*, 133 S. Ct. at 1107 (citing *Strickland*, 466 U.S. 668). As applied to Washington law, *Padilla* is just such a case.

In *Chaidez*, the Supreme Court held that *Padilla* did not merely apply the ordinary test for ineffective assistance of counsel; it first considered the threshold question of whether defense counsel has any constitutional duty to advise noncitizen defendants about the immigration consequences of pleading guilty. *Id.* at 1108. The notion that defense counsel has no such duty arose from a distinction many courts have drawn between direct and collateral consequences. *Padilla*, 559

7

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

U.S. at 365 & n.9. Immigration consequences were usually considered collateral and thus outside the scope of defense counsel's constitutional duty to advise. *Id.* at 364-65. *Padilla* did not fully reject the direct-versus-collateral distinction but held it was not appropriate as applied to immigration consequences. *Id.* at 366.

This court first explicitly adopted the distinction between direct and collateral consequences in a 1980 case holding that habitual criminal proceedings were collateral consequences. *State v. Barton*, 93 Wn.2d 301, 305, 609 P.2d 1353 (1980). Within three years of *Barton*, our legislature did what *Padilla* ultimately did in 2010—it rejected the direct-versus-collateral distinction as applied to immigration consequences, declaring that a noncitizen defendant must be warned about immigration consequences before pleading guilty.[1] LAWS OF 1983, ch. 199 § 1(1), *codified at* RCW 10.40.200(1). To give effect to this statute, the standard plea form in CrR 4.2 was promptly amended to include a statement warning noncitizen defendants of possible immigration consequences. That warning statement is not, itself, the required advice; it merely creates a rebuttable

---

[1]Contrary to the dissent's suggestion, we are not holding that the legislature has the authority to define the scope of constitutionally effective counsel. Rather, we are giving effect to our own precedent, which holds that a defense attorney has a basic duty to know and apply relevant statutes and professional norms, and the unreasonable failure to fulfill that duty is constitutionally deficient. *E.g., State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009); *see also Kimmelman v. Morrison*, 477 U.S. 365, 385, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986) (deficient performance where counsel failed to file a timely suppression motion because he did not engage in any pretrial discovery and therefore was not aware of the evidence to be presented).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

presumption the defendant has been properly advised. RCW 10.40.200(2);

*Sandoval*, 171 Wn.2d at 173.

RCW 10.40.200's plain language gives noncitizen defendants the unequivocal right to advice regarding immigration consequences and necessarily imposes a correlative duty on defense counsel to ensure that advice is provided. *State v. Butler*, 17 Wn. App. 666, 675, 564 P.2d 828 (1977) ("Beyond the defendant's power of knowledge and intelligence, the duty to protect the defendant lies first and foremost with his attorney."). While defense counsel's duty to advise regarding immigration consequences is imposed by statute, "[r]easonable conduct for an attorney includes carrying out the duty to research the relevant law." *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009) (citing *Strickland*, 466 U.S. at 690-91). In many cases[2] defense counsel's failure to fulfill his or her statutory duty may be due to an unreasonable failure to research or apply RCW 10.40.200, and there is no conceivable tactical or strategic purpose for such a failure.

Where an attorney unreasonably fails to research or apply relevant statutes without any tactical purpose, that attorney's performance is constitutionally deficient. *See, e.g., id.* at 865-69 (deficient performance where reasonably

---

[2]There may be situations where defense counsel's failure to provide the advice required by RCW 10.40.200 is objectively reasonable and thus not deficient. *See People v. Pozo*, 746 P.2d 523, 529 (Colo. 1987). And of course, even if deficient, counsel's performance is not constitutionally ineffective unless it is also prejudicial. *Kyllo*, 166 Wn.2d at 862.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

adequate research would have shown that a former pattern jury instruction misstated the law on self-defense); *State v. Aho*, 137 Wn.2d 736, 745-46, 975 P.2d 512 (1999) (deficient performance where reasonably adequate research would have prevented the possibility of conviction based on acts predating the relevant statute's effective date). *Cf. State v. Paredez*, 2004-NMSC-036, 136 N.M. 533, 101 P.3d 799, 805 (holding that the failure to advise a noncitizen defendant about immigration consequences as required by N.M. CODE R. 5-303(E)(5) could be ineffective assistance); RPC 1.1 cmt. 2 ("Perhaps the most fundamental legal skill consists of determining what kind of legal problems a situation may involve, a skill that necessarily transcends any particular specialized knowledge."). Indeed, "[a]n attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under *Strickland*." *Hinton v. Alabama*, 571 U.S. ___, 134 S. Ct. 1081, 1089, 188 L. Ed. 2d 1 (2014). The unreasonable failure to research and apply RCW 10.40.200 is as constitutionally deficient as the unreasonable failure to research and apply any relevant statute.

This resolves *Padilla*'s threshold question as applied to Washington law. *Padilla* thus becomes a "garden-variety application[ ] of the test in *Strickland*" that simply refines the scope of defense counsel's constitutional duties as applied to a specific fact pattern. *Chaidez*, 133 S. Ct. at 1107. Because *Padilla* did not

10

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

announce a new rule under Washington law, it applies retroactively to matters on collateral review under *Teague*.

2.      *Padilla* effected a significant change in Washington law

Whether a changed legal standard applies retroactively is a distinct inquiry from whether there has been a significant change in the law. An old rule whose new application significantly changes the law is unusual, but not impossible, as this case demonstrates. *Padilla*'s application of the old *Strickland* test significantly changed state law by superseding Washington appellate cases that apparently foreclosed the possibility that defense counsel's unreasonable and prejudicial failure to fulfill his or her duties under RCW 10.40.200 could ever be constitutionally ineffective.

(a)      A "new" rule under *Teague* is not always the same as a "significant change" in the law under RCW 10.73.100(6)

There is unquestionably a substantial overlap between "new" *Teague* rules and "significant changes" in state law, but they are two separate inquiries: "RCW 10.73.100(6) sets forth three conditions that must be met before a petitioner can overcome the one-year time bar: (1) a [significant] change in the law (2) that is material and (3) that applies retroactively." *In re Pers. Restraint of Gentry*, 179 Wn.2d 614, 625, 316 P.3d 1020 (2014). While we have used the *Teague* analysis and its definition of a "new" rule to determine whether a constitutional rule applies

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

retroactively, *id.* at 626, we have never imported *Teague*'s definition of a new rule into our analysis of whether there has been a significant change in the law.

In fact, we have always defined the two phrases differently. A significant change in state law occurs "where an intervening opinion has effectively overturned a prior appellate decision that was originally determinative of a material issue." *In re Pers. Restraint of Greening*, 141 Wn.2d 687, 697, 9 P.3d 206 (2000). By comparison, new rules for *Teague* purposes "are those that 'break[ ] new ground or impose[ ] a new obligation on the States or the Federal government [or] if the result was not *dictated* by precedent existing at the time the defendant's conviction became final.'" *State v. Evans*, 154 Wn.2d 438, 444, 114 P.3d 627 (2005) (alterations in original) (quoting *Teague*, 489 U.S. at 301). "If before the opinion is announced, reasonable jurists could disagree on the rule of law, the opinion is new." *Id.* (citing *Beard v. Banks*, 542 U.S. 406, 411, 124 S. Ct. 2504, 159 L. Ed. 2d 494 (2004)).

Using different definitions for a "significant change" in state law and a "new" rule under *Teague* is not only fully supported by the plain language of RCW 10.73.100(6) and our own precedent, it also makes good sense in light of the different purposes these phrases serve in our analysis. The "significant change" language is intended to *reduce* procedural barriers to collateral relief in the interests of fairness and justice. *Greening*, 141 Wn.2d at 697 ("While litigants

12

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

have a duty to raise *available* arguments in a timely fashion and may later be procedurally penalized for failing to do so . . . they should not be faulted for having omitted arguments that were essentially *unavailable* at the time."). Meanwhile, *Teague*'s broad definition of "new" rules that usually do not apply retroactively is intended to *strengthen* procedural barriers to collateral relief in the interests of finality and comity. *Danforth v. Minnesota*, 552 U.S. 264, 279-81, 128 S. Ct. 1029, 169 L. Ed. 2d 859 (2008).

A "significant change" in state law and a "new" constitutional rule of criminal procedure are different phrases with different meanings that serve different purposes. We will not conflate them. *Gentry*, 179 Wn.2d at 625; *cf. Commonwealth v. Sylvain*, 466 Mass. 422, 433-34, 995 N.E.2d 760 (2013) (retaining the general *Teague* framework but declining to adopt the expanded definition of a "new" rule that was articulated after *Teague*).

(b)     *Padilla* significantly changed Washington law

It is true that in most cases simply applying the ordinary *Strickland* test to new facts will announce neither new rules nor significant changes in the law. *See In re Pers. Restraint of Turay*, 150 Wn.2d 71, 83, 74 P.3d 1194 (2003) (Where an opinion "simply applies settled law to new facts, it does not constitute a significant change in the law."). However, Washington appellate cases issued before *Padilla* apparently foreclosed any possibility that the unreasonable, prejudicial failure to

13

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

provide the advice required by RCW 10.40.200 could ever be ineffective assistance of counsel. *Padilla* superseded these decisions, significantly changing state law.

The first appellate case to explicitly consider whether RCW 10.40.200 has any implications on the constitutional effectiveness of defense counsel is *State v. Holley*, 75 Wn. App. 191, 876 P.2d 973 (1994). In that case, the Court of Appeals held that a reference hearing was required to determine whether the defendant's guilty plea was entered in violation of RCW 10.40.200. *Id.* at 200-01. Even though it decided the case on statutory grounds, *Holley* chose to address the constitutional implications of RCW 10.40.200 and summarily stated in dictum that there were none. *Id.* at 196-98. To support this proposition, *Holley* relied on *State v. Malik*, 37 Wn. App. 414, 680 P.2d 770 (1984). *Malik* was based on facts occurring before RCW 10.40.200's effective date and so did not consider the impact of that statute on the duties of defense counsel. *State v. Littlefair*, 112 Wn. App. 749, 767, 51 P.3d 116 (2002). As discussed above, with the enactment of RCW 10.40.200, the unreasonable failure to research and apply that statute became constitutionally deficient performance. *Holley*'s dictum was thus erroneous.

The only decision of this court that touches on the issue presented here is *In re Personal Restraint of Yim*, 139 Wn.2d 581, 588, 989 P.2d 512 (1999). However, *Yim* dealt with a claim that the defendant received incorrect advice, rather than no advice, regarding immigration consequences. *Id. Padilla* is not

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Tsai*, No. 88770-5

*In re Pers. Restraint of Jagana*, No. 89992-4

limited to incorrect advice; it explicitly holds that providing no advice regarding immigration consequences is also deficient. *Padilla*, 559 U.S. at 370. Further, *Yim* discussed only the voluntariness of the defendant's plea without reference to the standard for determining ineffective assistance of counsel, and *Yim* did not consider RCW 10.40.200. *Yim*, 139 Wn.2d at 588-90 (citing *State v. Ward*, 123 Wn.2d 488, 512-13, 869 P.2d 1062 (1994); *Malik*, 37 Wn. App. at 416). *Yim*'s analysis does not address the issues presented where a noncitizen asserts his or her attorney unreasonably failed to provide any advice about the immigration consequences of pleading guilty as required by RCW 10.40.200.

Nevertheless, Washington appellate courts have routinely rejected the possibility that such a failure could ever be ineffective assistance of counsel. Each of those decisions relies on cases analyzing guilty pleas entered before the effective date of RCW 10.40.200, *Holley*'s erroneous dictum, or *Yim*'s distinguishable analysis. *See State v. Jamison*, 105 Wn. App. 572, 591-92, 595, 20 P.3d 1010 (2001) (citing *Yim*, 139 Wn.2d at 588; *Holley*, 75 Wn. App. at 198); *State v. Martinez-Lazo*, 100 Wn. App. 869, 876-77, 999 P.2d 1275 (2000) (citing *Yim*, 139 Wn.2d at 588; *Holley*, 75 Wn. App. at 197; *In re Pers. Restraint of Peters*, 50 Wn. App. 702, 704, 750 P.2d 643 (1988)), *abrogation recognized by Chaidez*, 133 S. Ct. at 1109 n.8; *Holley*, 75 Wn. App. at 197-98 (citing *Malik*, 37 Wn. App. at 416-17); *Peters*, 50 Wn. App. at 705 (noting the guilty plea was

15

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

entered before RCW 10.40.200's effective date); *see generally Littlefair*, 112 Wn. App. at 766-69 (discussing the history of RCW 10.40.200, *Malik*, and its progeny). *Padilla* superseded the theory underlying these decisions—that "anything short of an affirmative misrepresentation by counsel of the plea's deportation consequences could not support the plea's withdrawal." *Sandoval*, 171 Wn.2d at 170 n.1. This was a significant change in Washington law.

B.      Jagana is entitled to an evidentiary hearing on the merits

A significant, material, retroactive change in the law exempts a PRP from RCW 10.73.090(1)'s one-year time bar for collateral attacks. RCW 10.73.100(6). However, in light of the arguments currently presented for our review, only Jagana is entitled to an evidentiary hearing on the merits of his PRP.

Jagana alleges that his trial attorney unreasonably failed to ascertain Jagana's immigration status and did not provide him with any guidance as to any possible immigration consequences of his guilty plea, and further alleges that these failures rendered Jagana's plea involuntary. These allegations, if true, would establish that Jagana did not receive effective assistance of counsel in deciding whether to plead guilty. As discussed above, Washington courts would have rejected Jagana's claim before *Padilla* was issued. Jagana's failure to raise this apparently unavailable argument cannot render his PRP procedurally barred. *Greening*, 141 Wn.2d at 697. He is entitled to an evidentiary hearing.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

However, Washington courts have long recognized that where a defendant relies on his or her attorney's incorrect advice about the immigration consequences of pleading guilty, the defendant's plea may be rendered involuntary and withdrawn. *Yim*, 139 Wn.2d at 588. With the assistance of an attorney, Tsai filed a motion to withdraw his guilty plea in 2008, alleging his guilty plea was involuntary because his attorney incorrectly advised him about the immigration consequences. The trial court denied this motion, not because it was legally unavailable on the merits, but because the trial court decided it was untimely and not subject to equitable tolling. Perhaps the trial court erred in 2008, but Tsai did not appeal that decision and neither *Padilla* nor *Sandoval* addresses equitable tolling. Based on the arguments currently presented for our review, Tsai has not shown he is entitled to an evidentiary hearing on the merits of his PRP. *See* RAP 16.4(d); *Greening*, 141 Wn.2d at 697.

## CONCLUSION

This case is not a faceless one that bears no consequences. Numerous noncitizen defendants have benefited from the clear statutory requirement that defense counsel has a duty to advise them about the immigration consequences of pleading guilty. However, numerous meritorious claims that defense counsel unreasonably failed to fulfill this duty have been rejected based on the mistaken belief that RCW 10.40.200 has no constitutional implications. Now that this

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

mistaken belief has finally been corrected, holding such meritorious claims are procedurally barred would deprive many others of the opportunity to have the merits of their constitutional claims reviewed. In light of the legislature's long-standing commitment to ensuring noncitizen defendants understand the immigration consequences of conviction and this court's long-standing commitment to ensuring criminal defendants receive effective assistance of counsel, such an outcome would be unjust and fall short of the values underpinning our state statutory framework.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

WE CONCUR:

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Tsai*
*In re Pers. Restraint of Jagana*

No. 88770-5 (consolidated with No. 89992-4)

OWENS, J. (dissenting) — In 1992, we adopted the United States Supreme Court's method for determining when a constitutional rule that arises out of new case law may apply retroactively. *In re Pers. Restraint of St. Pierre*, 118 Wn.2d 321, 326-27, 823 P.2d 492 (1992). The Court's method comes from *Teague v. Lane*, 489 U.S. 288, 310, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989), and under that method only settled constitutional rules apply retroactively. New constitutional rules of criminal procedure do not apply retroactively. *Id.* In this case, both Tsai and Jagana ask that we apply a constitutional rule that arose out of new case law—*Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010)—retroactively to them.

In *Padilla*, the United States Supreme Court held that if a defendant's attorney fails to advise the defendant of the immigration consequences of pleading guilty, it violates the defendant's right to the effective assistance of counsel under the Sixth Amendment to the United States Constitution. *Id.* at 374. Thus, the question under our retroactivity framework is whether that holding constituted a new constitutional

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Tsai,* No. 88770-5
*In re Pers. Restraint of Jagana,* No. 89992-4
Owens, J., Dissenting

rule in Washington. To determine that, we must assess whether our courts interpreted the Sixth Amendment to require attorneys to advise their clients of the immigration consequences of pleading guilty prior to *Padilla.*

As I explain below, our case law shows that prior to *Padilla,* Washington courts had held that if an attorney failed to advise his or her client of the immigration consequences of pleading guilty, it was *not* a violation of the defendant's Sixth Amendment right to the effective assistance of counsel. Although some may disagree with those holdings, that was the law in Washington prior to *Padilla.* Thus, *Padilla* represented a new constitutional rule of criminal procedure in Washington. The United States Supreme Court came to this same conclusion when it resolved this exact question in the federal context. *See Chaidez v. United States,* __ U.S. __, 133 S. Ct. 1103, 1113, 185 L. Ed. 2d 149 (2013). Because *Padilla* is a new constitutional rule of criminal procedure, it cannot be applied retroactively to the petitioners.

The majority avoids this result by distorting the historical scope of Washington constitutional law regarding ineffective assistance of counsel. The majority relies on a Washington statute—RCW 10.40.200—to hold that *Padilla* represented a settled constitutional rule in Washington, and that *Padilla* may therefore be applied retroactively. That is mystifying, as *Teague* requires us to determine whether a *constitutional rule* of criminal procedure is retroactive, not a *statutory rule.* RCW 10.40.200 tells us nothing about how the Sixth Amendment was interpreted in

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Tsai*, No. 88770-5
*In re Pers. Restraint of Jagana*, No. 89992-4
Owens, J., Dissenting

Washington prior to *Padilla*. Although the majority may believe that Washington courts *should* have interpreted the Sixth Amendment to require attorneys to advise their clients of the immigration consequences of pleading guilty because of RCW 10.40.200, that was not the reality of Washington constitutional law prior to *Padilla*.

It is understandable why the majority wants to avoid this difficult result, but it is compelled by our precedent adopting the *Teague* analysis. Unless and until we overturn our adoption of the *Teague* analysis, we are bound by it. *Padilla* represented a new constitutional rule of criminal procedure in Washington. Thus, it cannot be applied retroactively to the petitioners under *Teague*. I respectfully dissent.

1. *Under* Teague, *New Constitutional Rules of Criminal Procedure Do Not Apply Retroactively*

Under *Teague*, "[u]nless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." 489 U.S. at 310. "Only when we apply a settled rule may a person avail herself of the decision on collateral review." *Chaidez*, 133 S. Ct. at 1107. A rule is new "'when it breaks new ground or imposes a new obligation' on the government." *Id.* (quoting *Teague*, 489 U.S. at 301). Put differently, "a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Teague*, 489 U.S. at 301.

3

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Tsai*, No. 88770-5
*In re Pers. Restraint of Jagana*, No. 89992-4
Owens, J., Dissenting

> 2. *As the United States Supreme Court Has Held,* Padilla *Was a New Rule in Jurisdictions (Like Washington) That Previously Held That Advice about Immigration Consequences Was Categorically Removed from the Scope of the Sixth Amendment*

Prior to *Padilla*, both federal courts and our courts had concluded that an attorney's advice about the immigration consequences of pleading guilty was categorically removed from the scope of the Sixth Amendment. As the United States Supreme Court said, state and lower federal courts had "almost unanimously concluded that the Sixth Amendment [did] not require attorneys to inform their clients of a conviction's collateral consequences, including deportation." *Chaidez*, 133 S. Ct. at 1109. Washington was one of those states. *See State v. Martinez-Lazo*, 100 Wn. App. 869, 876-78, 999 P.2d 1275 (2000) (holding that Martinez-Lazo did not receive ineffective assistance of counsel because "a defendant need not be advised of the possibility of deportation," which is merely a collateral consequence). The United States Supreme Court recently analyzed whether *Padilla* created a "'new rule'" under *Teague* in *Chaidez*. 133 S. Ct. at 1107. Because our courts' interpretation of the Sixth Amendment was the same as the federal courts, our *Teague* analysis should mirror the United States Supreme Court's *Teague* analysis in *Chaidez*.

In *Chaidez*, Chaidez pleaded guilty to deportable offenses, but her attorney failed to advise her of the immigration consequences of pleading guilty. *Id.* at 1106. Her conviction became final in 2004. *Id.* In 2009, after immigration proceedings

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Tsai*, No. 88770-5
*In re Pers. Restraint of Jagana*, No. 89992-4
Owens, J., Dissenting

commenced against her, she filed a writ of coram nobis[1] in federal district court, arguing ineffective assistance of counsel under the Sixth Amendment. *Id.* The Court decided *Padilla* while Chaidez's petition was still pending, and the Court granted her petition for certiorari to determine whether *Padilla* applied retroactively to her. *Id.* at 1106-07.

In finding that *Padilla* created a new rule (and thus that it could not be applied retroactively), the Court's analysis hinged on the distinction between defense counsel's duty to inform clients about deportation consequences as a matter of professional competence and defense counsel's requirements under the Sixth Amendment. *See id.* at 1108. The Court noted that "had *Padilla* merely made clear that a lawyer who neglects to inform a client about the risk of deportation is professionally incompetent," then *Padilla* would not have created a new rule. *Id.* Indeed, in *Padilla*, the Court noted that the plea form used by Kentucky trial courts already "provides notice of possible immigration consequences" and that many other states (including Washington) "require trial courts to advise defendants of possible immigration consequences." 559 U.S. at 374 n.15. However, in *Chaidez*, the Court

---

[1] Chaidez filed a writ of coram nobis instead of habeas relief because she was no longer "'in custody'" and therefore could not seek habeas relief. *Chaidez*, 133 S. Ct. at 1106 n.1 (citing 28 U.S.C. §§ 2255, 2241). The Court assumed without deciding that nothing in the case turned "on the difference between a *coram nobis* petition and a habeas petition." *Id.*

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Tsai*, No. 88770-5
*In re Pers. Restraint of Jagana*, No. 89992-4
Owens, J., Dissenting

noted that "*Padilla* did something more." 133 S. Ct. at 1108. *Padilla* considered whether "advice about deportation" was "'categorically removed' from the scope of the Sixth Amendment right to counsel because it involved only a 'collateral consequence' of a conviction, rather than a component of the criminal sentence." *Id.* (quoting *Padilla*, 559 U.S. at 366). In other words, *Padilla* broke new ground by determining that attorneys are required to inform their clients about the immigration consequences of pleading guilty *under the Sixth Amendment*.

As discussed above, Washington courts, like the federal courts and many other state courts prior to *Padilla*, "concluded that the Sixth Amendment [did] not require attorneys to inform their clients of a conviction's collateral consequences, including deportation." *Id.* at 1109; *Martinez-Lazo*, 100 Wn. App. at 876-78. Only Colorado and New Mexico held that the Sixth Amendment required attorneys to inform their clients of a conviction's collateral consequences. *Chaidez*, 133 S. Ct. at 1109 & n.9 (citing *People v. Pozo*, 746 P.2d 523, 527-29 (Colo. 1987); *State v. Paredez*, 2004-NMSC-036, 136 N.M. 533, 539, 101 P.3d 799). Since our courts' interpretation of the Sixth Amendment was the same as the federal courts, our *Teague* analysis here should mirror the United States Supreme Court's *Teague* analysis in *Chaidez*. Thus, like the Supreme Court, I would hold that *Padilla* created a new rule in Washington and cannot be applied retroactively under *Teague*. The majority's conclusion to the contrary is erroneously based on statutory authority, as explained below.

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Tsai*, No. 88770-5
*In re Pers. Restraint of Jagana*, No. 89992-4
Owens, J., Dissenting

>   3. *The Majority Fundamentally Errs by Conflating Statutory and Constitutional Authority*

As discussed above, Washington has long required trial courts and attorneys to inform defendants of the immigration consequences of pleading guilty as a matter of practice and professional competence pursuant to a statute. However, we never required that practice *under the Sixth Amendment* until we decided *State v. Sandoval*, 171 Wn.2d 163, 249 P.3d 1015 (2011), in light of *Padilla*. The majority fundamentally errs by giving a *statutory* attorney practice standard the same legal authority as a *constitutional* attorney practice standard for *Teague* retroactivity purposes. That is simply not correct under *Teague*. To determine retroactivity under *Teague*, we must assess whether a *constitutional rule* of criminal procedure is settled or new, not whether a *statutory rule* is settled or new.

In 1983, our legislature passed a bill requiring that defendants be advised of immigration consequences before pleading guilty. LAWS OF 1983, ch. 199, § 1(2) (currently codified as RCW 10.40.200(2)). That being said, our courts have consistently held "that a deportation proceeding that occurs subsequent to the entry of a guilty plea is merely a collateral consequence of that plea." *In re Pers. Restraint of Yim*, 139 Wn.2d 581, 588, 989 P.2d 512 (1999). Accordingly, before *Padilla* and *Sandoval*, our courts had concluded that the Sixth Amendment did not require attorneys to inform their clients of a conviction's collateral consequences, including

7

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Tsai*, No. 88770-5
*In re Pers. Restraint of Jagana*, No. 89992-4
Owens, J., Dissenting

deportation. *See Martinez-Lazo*, 100 Wn. App. at 876-78 (holding that Martinez-Lazo did not receive ineffective assistance of counsel because "a defendant need not be advised of the possibility of deportation," which is merely a collateral consequence). As discussed above, we did not recognize that the Sixth Amendment required attorneys to give competent advice about deportation consequences until *Sandoval*, in light of *Padilla*. *See Sandoval*, 171 Wn.2d at 169-71.

The majority fundamentally errs by asserting that in 1983, "our legislature did what *Padilla* ultimately did in 2010—it rejected the direct-versus-collateral distinction as applied to immigration consequences, declaring that a noncitizen defendant must be warned about immigration consequences before pleading guilty." Majority at 8. The legislature did not reject the "direct-versus-collateral distinction" in enacting what is now RCW 10.40.200 because it did not (and does not) have the constitutional authority to declare what the Sixth Amendment means for determining what constitutes ineffective assistance of counsel—that is our job. *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 176, 2 L. Ed. 60 (1803) ("It is, emphatically, the province and duty of the judicial department, to say what the law is."). Although the legislature can set practice standards for attorneys, only Washington courts can determine whether an attorney's violation of a legislative standard constitutes ineffective assistance *under the Sixth Amendment*. And in Washington, as discussed above, our courts had decided that an attorney failing to give advice about immigration consequences (as required by

8

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Tsai,* No. 88770-5
*In re Pers. Restraint of Jagana,* No. 89992-4
Owens, J., Dissenting

RCW 10.40.200) was categorically removed from the scope of the Sixth Amendment. *Martinez-Lazo,* 100 Wn. App. at 876-78.

Despite the existence of RCW 10.40.200(2), the Court of Appeals' decision in *Martinez-Lazo* accurately reflected the scope of Washington constitutional law prior to *Padilla*. Even Martinez-Lazo "acknowledge[d] the general rule in Washington that deportation is a collateral consequence"; instead, he argued that because "his deportation [was] certain, [it was] therefore no longer a collateral consequence." *Id.* at 876-77. Martinez-Lazo's argument eschewing the distinction between direct and collateral consequences in the deportation context was not recognized until *Padilla* and *Sandoval*. Thus, although Washington *statutory* law provided that attorneys were required to inform their clients of immigration consequences, it was not a *constitutional* requirement under our state courts' interpretation of the Sixth Amendment. That distinction should be dispositive of our *Teague* analysis—we are determining whether a *constitutional rule* of criminal procedure is retroactive, not a *statutory rule*.

It should be evident from the majority's own citations that it has no authority to support its holding. The only pre-*Padilla* case the majority cites that actually held that it was ineffective assistance of counsel for an attorney to fail to advise his or her client of the immigration consequences of pleading guilty is from New Mexico. *Paredez,* 136 N.M. 533. As noted above, that is one of the two states the United

9

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Tsai*, No. 88770-5
*In re Pers. Restraint of Jagana*, No. 89992-4
Owens, J., Dissenting

States Supreme Court discussed in *Chaidez* that did not consider deportation to be a collateral consequence. 133 S. Ct. at 1109 & n.9.

Thus, I would conclude that *Padilla* created a new rule in Washington, and I would therefore hold that the rule imposed by *Padilla* is not retroactive under *Teague*. Accordingly, I would find the petitioners' personal restraint petitions time barred.

## CONCLUSION

I recognize that "[t]his case is not a faceless one that bears no consequences." Majority at 17. But we are a court of law, and we are required to faithfully apply our precedent. Our cases have consistently applied the *Teague* analysis to decide whether constitutional rules apply retroactively. Under a proper *Teague* analysis here, we do not look to whether our courts *should have been* interpreting the Sixth Amendment to require attorneys to inform their clients of the deportation consequences of pleading guilty. Rather, we must assess how our courts *actually* interpreted the Sixth Amendment and then decide whether *Padilla* broke new ground from our courts' prior approach. Prior to *Padilla*, our courts had concluded that the Sixth Amendment did not apply to an attorney's advice about the immigration consequences of pleading guilty. Thus, *Padilla* created a new rule in Washington. I would therefore hold that *Padilla* may not be applied retroactively under *Teague*. Accordingly, I would find Tsai's and Jagana's personal restraint petitions time barred and affirm the Court of Appeals.

10

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Tsai*, No. 88770-5
*In re Pers. Restraint of Jagana*, No. 89992-4
Owens, J., Dissenting

Fairhurst, J.

Madsen, C.J.