# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 58415-8-II |
| Respondent, | |
| v. | |
| MICHAEL SCOTT PEARSON, | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, C.J. — Michael Pearson was charged with one count of second degree assault with a deadly weapon after an altercation with his neighbor, Elijah St. Clair. The incident was captured on surveillance cameras at the tiny home community where both parties lived. At a jury trial, the arresting officer was allowed to testify, over Pearson's objections, that she watched the surveillance video before arresting Pearson. The same officer was allowed, again, over defense objections, to give her opinion about what the surveillance video depicted, despite the fact that she was not present for the altercation and therefore was in no better position than the jury to evaluate what the video showed. During this testimony, the officer repeatedly referred to the object in Pearson's hand in the video as a knife, and described his actions as "winding up," "building power" as if to "strike." Verbatim Rep. of Proc. (VRP) (May 31, 2023) at 257.

The jury found Pearson guilty and sentenced him to 55 months of confinement for the assault with an additional 12 months added for the use of a deadly weapon. Pearson appeals, claiming that the trial court erred in admitting the arresting officer's testimony for two reasons:

first, that the officer's statement that she viewed the security footage prior to arresting Pearson constitutes an improper opinion on Pearson's guilt; and second, that allowing the officer to describe the surveillance video exceeded the allowable scope of lay witness testimony, as she was not present for the altercation and was therefore in no better position to evaluate what the video showed than the jury. Pearson also claims that he received ineffective assistance of counsel because when his counsel objected to the officer testifying about the content of the video, the court asked what support he was relying on for the objection and counsel failed to provide the relevant authority.

We hold that the officer's testimony that she viewed the security footage prior to arresting Pearson did not constitute an improper opinion on guilt, and the trial court did not err in allowing this testimony. We further hold that the officer's testimony describing the contents of the video constituted improper opinion testimony, and that it was error to admit this evidence. However, the admission of the officer's testimony was harmless when viewed in the context of the entire trial. Finally, we reject Pearson's ineffective assistance of counsel claim, as even if his counsel's performance was deficient, Pearson cannot show that he was prejudiced by such deficient performance. Accordingly, we affirm the conviction.

FACTS

I. ALTERCATION AND INVESTIGATION

In March 2023, Michael Pearson and Elijah St. Clair were both residents of a tiny home village in Olympia, Washington. On March 9, 2023, St. Clair saw Pearson standing behind St. Clair's tiny home, which is against the rules of the community. St. Clair confronted Pearson, asking if he knew it was against the rules to be behind another resident's home, and an argument ensued.

During this argument, St. Clair alleges, Pearson made numerous disparaging comments toward him, including the use of racial slurs. St. Clair then went back into his home to "stop and recuperate." *Id.* at 371.

When St. Clair reemerged from his home to go to the community manager's office, he found Pearson blocking his path. St. Clair attempted to pass by, bumping into Pearson, who followed him and continued to make disparaging comments. St. Clair turned around to face Pearson, and Pearson pulled an object out of his pocket and took a step toward St. Clair. St. Clair then yelled " 'He has a weapon, he has a knife, he has a knife," and ran in the direction of the manager's office for help. *Id.* at 376. When Timothy Dominick, the manager of the tiny home community, emerged from his office, Pearson denied having a knife. Dominick called the police.

Officers Kristen Wright and Jeffrey Davis responded to the 911 call. When they arrived, Pearson was sitting alone in a sitting area in the tiny home community. The officers questioned Pearson, who told them that he and St. Clair had gotten into a verbal altercation, but he could not remember what it was about. Pearson denied having a knife, but stated that others claimed that he did. Officer Davis performed a pat down of Pearson's waistband and did not find any weapons, and the officers did not recover a knife during the investigation.

Officer Wright then went to the manager's office, where Dominick and St. Clair were waiting. The tiny home community is equipped with security cameras, and while in the office, Officer Wright viewed security footage of the incident more than 10 times. Officer Wright also recorded a video and several still shots of the footage on her cell phone before leaving the manager's office. After viewing the video and speaking with both Dominic and St. Clair, Officer

3

Wright placed Pearson under arrest. Pearson was subsequently charged with one count of assault in the second degree with a deadly weapon.

## II. TRIAL

Before trial, Pearson moved to preclude testimony from either officer that would indicate that they had viewed the surveillance footage prior to arresting Pearson, as he contended that this testimony would amount to an improper opinion of guilt. The court denied this motion. During the trial, Officer Wright testified, over repeated objections, that she watched the video of the incident several times prior to arresting Pearson. The court also allowed Officer Wright to testify, over Pearson's objection, as to what she believed the video showed. While describing the video, Officer Wright repeatedly referred to the object in Pearson's hand as "the knife" or "the weapon," and she noted that Pearson appeared to "wind up" his arm before abruptly "jamming [the object] into his right pocket." *Id.* at 242. After viewing the video, the State introduced the still screenshots of the surveillance recording, which Officer Wright walked through and described one by one. In response to the State's questions about the still photos, Officer Wright testified that one of the photos showed Pearson "[drawing] the knife back" and "building power" as if about to "strike." *Id.* at 257. Defense counsel cross-examined Officer Wright at length regarding her descriptions of the video, asking her to further describe stills of the security footage and asking whether she agreed that various interpretations of the footage were possible.

When defense counsel objected to Officer Wright's testimony, claiming that her descriptions of the surveillance footage were merely her "opinion" and noting that she was not called as an expert witness, the court asked what rule or case counsel was relying on to exclude this evidence. *Id.* at 223. Defense counsel responded "I don't have a specific cite other than, Your

Honor, a witness cannot comment on evidence." *Id.* The court continued to ask counsel for any authority that would preclude Officer Wright's testimony, but counsel did not provide any, and instead continued to note that allowing Officer Wright to share her opinion of what the video depicted would "invade[ ] the province of the jury." *Id.* at 223, 225. The court overruled these objections.

In addition to the facts set forth above, St. Clair testified at trial that he and Pearson were engaged in a verbal altercation during which Pearson repeatedly called him the N-word. St. Clair began walking toward the management office and Pearson followed behind him. St. Clair turned around and saw Pearson pull out a knife from his pants pocket. St. Clair began screaming "[h]e has a knife!" *Id.* at 376. By the time Dominick, the office manager, stepped between St. Clair and Pearson, Pearson no longer had the knife and was holding his hands up. St. Clair described the knife as a butterfly knife.

The jury found Pearson guilty of one count of assault in the second degree, and found that he was armed with a deadly weapon at the time of the crime. Pearson was sentenced to 55 months of imprisonment for the assault plus 12 months of imprisonment for the deadly weapon enhancement, for a total of 67 months of confinement. Pearson now appeals.

ANALYSIS

I. OFFICER WRIGHT'S TESTIMONY

A. Legal Principles

We review a trial court's decision to admit or exclude evidence for abuse of discretion. *State v. Demery*, 144 Wn.2d 753, 758, 30 P.3d 1278 (2001) (plurality opinion). If a witness is not testifying as an expert, they may not testify in the form of opinions or inferences unless those

opinions or inferences are "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge." ER 701. To determine whether a statement is impermissible opinion testimony, a court considers the following factors: " '(1) the type of witness involved, (2) the specific nature of the testimony, (3) the nature of the charges, (4) the type of defense, and (5) the other evidence before the trier of fact.' " *State v. Montgomery*, 163 Wn.2d 577, 591, 183 P.3d 267 (2008). "Testimony in the form of an opinion or inferences otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." ER 704.

A witness may not testify in the form of an opinion regarding the guilt of a defendant; such testimony is prejudicial to the defendant because it " 'invad[es] the exclusive province of the [jury]." *Demery*, 144 Wn.2d at 759 (alteration in original) (internal quotation marks omitted) (quoting *City of Seattle v. Heatley*, 70 Wn. App. 573, 577, 854 P.2d 658 (1993)). An opinion on guilt is improper whether made directly or by inference. *Montgomery*, 163 Wn.2d at 594. The supreme court has " 'expressly declined to take an expansive view of claims that testimony constitutes an opinion on guilt.' " *Demery*, 144 Wn.2d at 760 (quoting *Heatley*, 70 Wn. App. at 579). A police officer's testimony offered in the context of explaining the course of the investigation does not constitute an improper opinion as to the defendant's guilt. *State v. Song Wang*, 5 Wn. App. 2d 12, 16, 424 P.3d 1251 (2018).

A police officer's live testimony is especially likely to influence a jury, as it carries an " 'aura of special reliability and trustworthiness.' " *Demery*, 144 Wn.2d at 763 (internal quotation marks omitted) (quoting *United States v. Espinosa*, 827 F.2d 604, 613 (9th Cir. 1987)). Moreover,

a police officer's opinion on guilt is minimally probative as their area of expertise is in determining whether an arrest is justified, not in determining when there is guilt beyond a reasonable doubt. *Montgomery*, 163 Wn.2d at 595.

B. Application

*1. Testimony That Pearson Was Arrested After the Officer Reviewed the Video*

Pearson argues that by testifying that she chose to arrest Pearson after viewing the security footage, Officer Wright implicitly told the jury that she had concluded that the video showed Pearson assaulting St. Clair. He contends that this implication amounts to an improper opinion of guilt, and that the trial court's decision to allow this testimony was thus error.

Pearson analogizes this testimony to that in *State v. Quaale*, 182 Wn.2d 191, 195, 340 P.3d 213 (2014), a driving under the influence (DUI) case in which a police officer testified that he determined after performing a field sobriety test that " '[t]here was no doubt [the defendant] was impaired.' " The court in *Quaale* concluded that this testimony constituted an improper opinion on guilt, as it went to the core issue and the only disputed element of the case: whether Quaale was intoxicated. *Id.* at 200. Pearson argues that, like in *Quaale*, the core factual issue in his case was whether or not he had assaulted St. Clair with a deadly weapon, and that Officer Wright's testimony that she had arrested Pearson based on the evidence she had seen (the security footage) implied to the jury that she concluded that he had assaulted St. Clair.

*Quaale* is distinguishable from the case at hand. The holding in *Quaale* was at least partially based on the fact that the officer "cast his conclusion in absolute terms and improperly gave the appearance that the [field sobriety test] may produce scientifically certain results." *Id.* at 199. Officer Wright's testimony was not cast in absolute terms—she merely said that "based on

the evidence that I had seen and the statements I had taken, I placed Mr. Pearson under arrest." VRP (May 31, 2023) at 262. She did not state that she was certain that Pearson had assaulted St. Clair, or that she had "no doubt" of her conclusion as the officer in *Quaale* had. Thus, Officer Wright's statement that she placed Pearson under arrest based on the evidence she had seen does not rise to the same level as the *Quaale* officer's statement that he had " 'no doubt' " that the defendant was impaired.

Furthermore, the testimony at issue in *Quaale* parroted the legal standard contained in the jury instruction. *Quaale*, 182 Wn.2d at 200. By using the word "impaired," which was the exact word that the jury was instructed must be found to return a guilty verdict, the officer very clearly told the jury that he believed the defendant met that standard, and was therefore guilty as charged. *Id.* Officer Wright did not reference any legal standards or any specific issue that the jury was under instruction to assess—she merely stated that she placed Pearson under arrest based on the evidence she had seen. The logical connection between Officer Wright's testimony and her opinion on whether or not Pearson was guilty of assault is tenuous and requires a much larger inferential leap than was the case in *Quaale*. As the State points out, it is reasonable to presume that the jury already knows that the defendant was arrested.

Finally, as the State correctly argues, an officer's statement that they believed that the defendant had committed the offense for which the defendant was on trial, made in the context of explaining the course of the investigation and arrest, is not an impermissible opinion on guilt. *Song Wang*, 5 Wn. App. 2d at 16. An officer does not need to be certain beyond a reasonable doubt that a person is guilty of a crime in order to investigate them or place them under arrest—they are only required to have knowledge of facts sufficient to cause a reasonable person to believe that an

offense had been committed. *See State v. Gaddy*, 152 Wn.2d 64, 70, 93 P.3d 872 (2004). Officer Wright testified that she spoke with Pearson, Dominic, and St. Clair, and watched the surveillance footage multiple times, before placing Pearson under arrest. This does not necessarily mean that she had formed an opinion as to Pearson's guilt at the time she arrested him, only that she found the evidence sufficient to support probable cause to place Pearson under arrest. Accordingly, Officer Wright's testimony that she placed Pearson under arrest after viewing the surveillance footage does not constitute an improper opinion on guilt, and the trial court did not abuse its discretion in allowing this testimony.

*2. Testimony Describing the Video*

Pearson argues that the trial court erred in admitting Officer Wright's testimony as to what the surveillance footage showed, as this testimony constituted subjective lay opinions that invaded the province of the jury. He contends that the jury could have viewed the exhibits for themselves and come to their own conclusions, and that Officer Wright was in no better position to determine what the video showed than the jury was.

The State responds that Wright *was* in a better position to describe what the video showed, as she conducted an investigation on the date of the incident and had seen the location and all parties near the time of the events. The State further argues that Pearson also questioned Officer Wright about her observations of the video during cross-examination, and that some of her answers to these questions supported Pearson's version of events. Finally, the State argues that Officer Wright did not provide any definitive conclusions that what was displayed on the video constituted a crime, but was merely a simple description of what occurred, which was helpful for the jury to

consider in conjunction with their own observations to come to their own conclusion as to whether a crime was committed.

Pearson responds that the identities of the parties were not at issue and Wright's subsequent investigation is not a sufficient reason for her to provide play-by-play commentary on the video. Pearson further argues that the only contested factual issue at trial was whether Pearson wielded a knife against St. Clair, and Wright was in no better position to evaluate whether the video showed Pearson wielding a knife than the jury was. Pearson finally argues that, as a law enforcement officer, Wright's opinions carry a " 'special aura of reliability,' " and were therefore especially likely to influence the jury. Reply Br. of Appellant at 3 (quoting *State v. Kirkman*, 159 Wn.2d 918, 928, 155 P.3d 125 (2007)).[1]

We agree with Pearson that Wright's subjective opinions as to what the surveillance video showed were improper. The testimony at issue—in which Wright told the jury that Pearson held a knife and drew it back, as if preparing to strike—goes far beyond the authentication of the video or providing the context behind the investigation. Wright may have been in a better position than the jury to identify the parties shown in the video, or to testify that the clothes the parties were wearing were the same clothes she observed on the day of the incident. She was not, however, a witness to the altercation itself, and thus was in no better position than the jury to determine whether the object shown in the video was a knife.

---

[1] Both parties cite to cases from outside of Washington that deal with the issue of whether a law enforcement officer or other lay witness can testify as to their observations of video evidence when they were not present for the incident shown on the video, as there is no Washington case that is directly on point. Because this question can be settled based on the plain language of ER 701 and other Washington cases applying the rule, we need not consider these cases as persuasive authority.

ER 701 allows a lay witness to testify as to their subjective opinions or inferences only if that testimony was "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge." Officer Wright's opinions on what the video showed may have been rationally based on her perception of the video, but they were not helpful in providing a clear understanding of her testimony or the determination of a fact in issue. Because Wright did not witness the altercation herself, nor did she observe any knife or weapon on the scene, her testimony as to whether Pearson possessed a knife was merely speculation and opinion. Wright's testimony describing her investigation of the incident did not need to be clarified by her "play-by-play" testimony describing what the video showed, so these statements were therefore not helpful in providing a clearer understanding of her other testimony. The testimony also did not provide any information to the jury that would be helpful in determining this contested factual issue beyond what the jury could already see with their own eyes. In fact, it may have improperly substituted Officer Wright's opinion for one formed independently by the jury, considering the "special aura of reliability" her testimony carries.

We conclude that the trial court erred in admitting this testimony, and the fact that Pearson also questioned Officer Wright about her observations of the video during cross-examination does not vitiate any error in allowing Wright to initially testify about her belief of what the video depicted. Having concluded that the trial court erred in admitting this testimony, we next consider whether the error was harmless.

11

II. HARMLESS ERROR

A. Legal Principles

Having concluded that Officer Wright was improperly permitted to opine that Pearson wielded a knife because such testimony invaded the province of the jury, we must determine whether this error was harmless.

In determining whether a constitutional error warrants a new trial, we ask whether the error was harmless beyond a reasonable doubt. *State v. Guloy*, 104 Wn.2d 412, 425-26, 705 P.2d 1182 (1985). "A constitutional error is harmless if the appellate court is convinced beyond a reasonable doubt that any reasonable jury would have reached the same result in the absence of the error." *Id*. at 425. Our supreme court held in *Guloy* that appellate courts should apply the " 'overwhelming untainted evidence' " standard, and look "only at the untainted evidence to determine if the untainted evidence is so overwhelming that it necessarily leads to a finding of guilt." *Id*. at 426.[2]

Pearson argues that the State cannot carry this burden because, as a police officer, Wright's alleged opinion on guilt carries a " 'special aura of reliability,' " and Wright's testimony interfered with the jury's ability to independently evaluate whether the video evidence showed an assault with a knife or merely a verbal altercation. Br. of Appellant at 23-24 (quoting *Kirkman*, 159 Wn.2d at 928). Pearson claims that the video evidence fails to affirmatively establish whether or not he possessed a knife, so the jury likely deferred to the description given by Wright to conclude that

---

[2] The State, it should be noted, argues that this is a claim of evidentiary error that should be reviewed under the nonconstitutional harmless error test. In the alternative, the State argues, should this court choose to apply the constitutional harmless error standard, the error should still be considered harmless. While it is true that Pearson's argument relies heavily on ER 701, the nature of this error—an improper opinion that touches on an ultimate issue—is a constitutional error. *Quaale*, 182 Wn.2d at 201-02.

he *did* possess a knife, and found him guilty on that basis. Pearson further argues that the only evidence besides the allegedly improper testimony from Wright was that of St. Clair, and without the officer's testimony the jury would have had a much more difficult task of determining guilt or innocence.

The State responds there is no reasonable probability that, if the court had excluded Wright's testimony describing the surveillance footage, the jury would have reached a different conclusion, because the jury also viewed the video and screenshots and heard testimony from St. Clair consistent with Officer Wright's descriptions. The State points out that Pearson also elicited testimony from Officer Wright describing the video in support of its theory of the case, and relied on this testimony in its closing arguments, while the State focused primarily on the video itself and St. Clair's testimony in closing. Finally, the State reiterates that the jury was properly instructed that they were the sole judge of the credibility of the witnesses, and the jury could have reached the same verdict based on St. Clair's testimony alone.

We agree with the State. The jury viewed the video and was equally capable of determining what it depicted. The jury was also instructed that it was the sole judge of the weight to be given the evidence, as well as the credibility of the witnesses. The jury was permitted to conclude, based on St. Clair's testimony alone, that Pearson assaulted St. Clair with a knife. The State has demonstrated that the remaining untainted evidence necessarily leads to a finding of guilt.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Pearson argues that he was deprived of the effective assistance of counsel when his attorney failed to cite a particular court rule or appellate case that would have supported his objection to Officer's Wright's opinion testimony. The State responds that defense counsel adequately apprised

the trial court of the nature of the objection and the legal rule on which it rested. We agree with the State.

A. Legal Principles

If a defense attorney's performance is so ineffective that it deprives the defendant of a fair trial, the attorney's performance is constitutionally deficient and the defendant may be entitled to a new trial. *In re Pers. Restraint of Yung-Cheng Tsai*, 183 Wn.2d 91, 99, 351 P.3d 138 (2015). To prevail on an ineffective assistance of counsel claim, an appellant must show two things: (1) that defense counsel's representation fell below an objective standard of reasonableness; and (2) that defense counsel's deficient representation prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). A defendant is prejudiced by counsel's deficient representation when there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have differed. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

Whether counsel's representation was ineffective is judged by an objective standard of reasonableness under prevailing professional norms. *Yung-Cheng Tsai*, 183 Wn.2d at 99. A defense counsel's failure to research or apply relevant statutes without any tactical purpose constitutes deficient performance. *Id*. at 102. " '[A]n attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential of unreasonable performance.' " *Id*. (quoting *Hinton v. Alabama*, 571 U.S. 263, 274, 134 S. Ct. 1081, 188 L. Ed. 2d 1 (2014)). Courts assume a strong presumption that counsel's representation was effective, and a defendant bears the burden of rebutting this presumption. *McFarland*, 127 Wn.2d at 335, 337.

B. Application

Pearson argues that his counsel's failure to cite ER 701 as the authority to support his motion to preclude Officer Wright's testimony was deficient performance. He argues that, while counsel was able to articulate the general principles underlying this rule, he failed to cite to this rule when the trial court repeatedly asked him to cite a case or rule for his proposition. Pearson contends that this constitutes deficient performance under a number of cases that provide that failure to provide the court with the relevant authority is unreasonably deficient performance.

As an initial matter, we note that counsel objected to Wright's testimony on the ground that it embraced an ultimate issue to be decided by the jury. That lay witnesses generally cannot testify on ultimate issues that fall within the jury's purview to decide is a well settled principle. *Quaale*, 182 Wn.2d at 200-02. Whether *this particular* testimony would violate that well settled rule "depend[s] of the specific circumstances of each case" and is a matter for the trial court to determine. *Heatley*, 70 Wn. App. at 579. Defense counsel, in our view, adequately set forth the rule.

Even if counsel had performed deficiently, however, Pearson's claim fails because he has not demonstrated that he was prejudiced by counsel's allegedly deficient performance. As discussed above, any error that resulted from the trial court's failure to exclude Officer Wright's improper opinion testimony was harmless. For the same reasons that these errors were harmless, Pearson cannot show that the outcome of this case would have been different had his counsel cited the proper authority. If he had cited ER 701, and the trial court had decided to exclude Wright's testimony, the jury still would have had the surveillance footage and St. Clair's testimony upon which to return a guilty verdict. We are not persuaded that the outcome of the trial more probably

than not would have been different in the absence of Wright's improper opinion testimony. Thus, Pearson's ineffective assistance of counsel claim fails.

CONCLUSION

We hold that Officer Wright's statements that she arrested Pearson after viewing the surveillance footage did not constitute an improper opinion on guilt, and the trial court did not abuse its discretion in allowing this testimony. We also hold that the trial court did err in allowing Officer Wright to describe what the surveillance footage showed, but that this error was harmless when viewed within the context of all the evidence. Finally, we reject Pearson's claim that he received ineffective assistance of counsel, because even if his counsel's performance was deficient, Pearson cannot show that this deficient representation prejudiced him. We affirm Pearson's conviction.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, C.J.

We concur:

GLASGOW, J

PRICE, J.