IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| STATE OF WASHINGTON, | No. 81031-6-I |
| Respondent, | |
| v. | ORDER DENYING MOTION FOR RECONSIDERATION, WITHDRAWING OPINION, AND SUBSTITUTING OPINION |
| AZIAS DEMETRIUS ROSS, | |
| Appellant. | |

Appellant Azias Ross filed a motion for reconsideration of the opinion filed on June 15, 2020. The court has determined that the motion should be denied. However, the opinion should be withdrawn, and a substitute opinion filed.

Now, therefore, it is hereby

ORDERED that the motion for reconsideration is denied; and it is further

ORDERED that the opinion filed on June 15, 2020, is withdrawn; and it is further

ORDERED that a substitute opinion shall be filed.

_____
Chun, J.

_____          _____
Brennan, J                                Andrus, A.C.J.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 81031-6-I |
| Respondent, | |
| | DIVISION ONE |
| v. | |
| | UNPUBLISHED OPINION |
| AZIAS DEMETRIUS ROSS, | |
| Appellant. | |

CHUN, J. — At the age of 19, Azias Ross acted as the get-away driver in a series of home invasions, leading a jury to convict him of ten felony offenses, with multiple firearm enhancements and a deadly weapon enhancement. The trial court sentenced Ross to 507 months for his role in these crimes. In a prior appeal, Division Two of this court reversed Ross's sentences on two counts, concluding they exceeded the statutory maximum for the crimes when combined with the firearm enhancements. The court remanded the case with instructions to resentence Ross on these two counts "not to exceed the statutory maximum sentence." It also concluded the Judgment and Sentence erroneously numbered a third count applicable to Ross and remanded to correct that scrivener's error.

On remand, Ross argued the trial court had the discretion to resentence him on all ten counts and to consider his youth as a mitigating factor in imposing new sentences. The court determined it lacked discretion to do so and denied his request. Ross appealed and filed a personal restraint petition (PRP) that

Citations and pin cites are based on the Westlaw online version of the cited material.

asserts other trial and sentencing errors.

We conclude the trial court did have discretion to consider Ross's request for a new sentencing hearing and thus abused its discretion in not considering his request. We remand to the trial court to consider whether to grant Ross a new sentencing hearing. We deny the PRP.

## I. BACKGROUND

A jury convicted Ross of conspiracy to commit first degree burglary, two counts of first degree burglary, two counts of first degree robbery, three counts of first degree trafficking in stolen property, unlawful imprisonment, and theft of a firearm. Each, except the theft of a firearm count and one of his trafficking counts, included a firearm enhancement. The trafficking count without a firearm enhancement included a deadly weapon enhancement. The jury also convicted Ross of two counts of assault and another robbery count, but the trial court determined those convictions violated double jeopardy and dismissed them without prejudice.

On appeal, Division Two of this court affirmed Ross's convictions. State v. Oeung, noted at 196 Wn. App. 1011, slip op. at 70 (2016).[1] But it remanded to resentence Ross for his conspiracy and unlawful imprisonment counts because his sentences, when combined with their firearm enhancements, exceeded the statutory maximum sentence. Oeung, slip op. at 70. It also remanded to acknowledge a scrivener's error as to the trafficking count with a deadly weapon enhancement and remanded that count for resentencing. Oeung, slip op. at 70.

---

[1] Ross was tried with his girlfriend and accomplice, Soy Oeung.

Finally, it remanded to have the dismissal on double jeopardy grounds to be with prejudice. Oeung, slip op. at 70.

Upon remand, Ross argued that because Division Two had remanded two of his convictions for resentencing on the merits, the trial court had discretion to fully resentence him on all counts. He also argued that changes in the law for youth sentencing required the court to meaningfully consider his youthfulness when resentencing him, and that the firearm enhancements in his sentence could run concurrently. The court ultimately denied Ross's request for a full resentencing on the ground that it lacked the discretion to do so. The court also distinguished the case Ross relied on in arguing that his firearm enhancements could run concurrently—State v. Houston-Sconiers[2]—on the ground that Ross was not a juvenile when he committed his crimes. Ross appeals. Ross also submits a PRP related to issues at his trial and at sentencing.

## II. ANALYSIS

### A. Direct Appeal

In his direct appeal, Ross argues the trial court abused its discretion by failing to recognize its discretion to fully resentence him on all counts. We agree.

A trial court has discretion on remand to revisit issues that were not the subject of a previous appeal. State v. Kilgore, 167 Wn.2d 28, 42, 216 P.3d 393 (2009) (citing State v. Barberio, 121 Wn.2d 48, 51, 846 P.2d 519 (1993)). An appellate court's mandate limits the scope of a trial court's discretion to resentence on remand. Kilgore, 167 Wn.2d at 42. But if the mandate does not

---

[2] 188 Wn.2d 1, 391 P.3d 409 (2017).

limit the trial court to only ministerial corrections, then the court may conduct a full resentencing proceeding. State v. Toney, 149 Wn. App. 787, 792–93, 205 P.3d 944 (2009); see also Kilgore, 167 Wn.2d at 41 (holding a trial court had discretion under RAP 2.5(c)(1) to revisit an exceptional sentence on the defendant's remaining five convictions after the appellate court reversed two convictions). We review for abuse of discretion whether a trial court erred by declining to resentence a defendant. See Kilgore, 167 Wn.2d at 42.

Division Two concluded the trial court erred in calculating Ross's standard sentence range under RCW 9.94A.533(3)(g). Oeung, slip op. at 69. The statutory maximum for Ross's sentence for conspiracy was 10 years and for unlawful imprisonment was 5 years. Oeung, slip op. at 69. Yet the original sentencing court calculated his standard ranges, including the firearm enhancements, at 132.75 to 164.25 months (11 years, 1 month to 13 years, 8 months) for conspiracy and 61 to 75 months (5 years, 1 month to 6 years, 3 months) for unlawful imprisonment. When calculating a standard sentencing range with a firearm enhancement, RCW 9.94A.533(3)(g) requires the court to reduce the base sentencing range so that when the firearm enhancement is added, the total sentence does not exceed the statutory maximum. Division Two vacated Ross's sentences on these two counts and remanded to the trial court "to correct the sentencing ranges" for the conspiracy and unlawful imprisonment counts and to resentence Ross on these two counts "not to exceed the statutory maximum under RCW 9.94A.021 and .533(3)g)." Oeung, slip op. at 68–69. It also remanded for resentencing as to one of his trafficking counts. Oeung, slip

op. at 69.

We cannot conclude from these instructions that resentencing on the conspiracy and unlawful imprisonment counts was purely ministerial. Because Division Two's mandate required the trial court to exercise its discretion and impose a new sentence on these two counts, it did not limit the trial court to ministerial corrections. Thus, the trial court had discretion to fully resentence as to all counts. The trial court did not recognize its discretion to do so.[3] We thus remand for the trial court to consider Ross's request for a new sentencing hearing on all of his convictions.[4]

B. PRP

In his PRP, Ross raises claims related to the confrontation clause, the State's slides and oral assertions at trial, his special verdict forms, and cumulative error. He also argues that changes in the law of youth sentencing entitle him to resentencing. We reject these claims.

A petitioner alleging constitutional error in their PRP bears the "threshold, prima facie burden of showing by a preponderance of the evidence that [they

_____

[3] The trial court recognized that Ross had an opportunity at his original sentencing to argue that the court should consider his youth, that the original sentencing court said it would not have granted an exceptional downward sentence, and that this decision was a discretionary one that it did not believe appropriate to revisit under In re Personal Restraint of Light-Roth, 200 Wn. App. 149, 401 P.3d 459 (2017). CP 659. But that is a different matter than exercising discretion to resentence entirely.

[4] Ross alternatively asserts his right to resentencing on the grounds that his current sentence is unjust and unconstitutional under State v. O'Dell, 183 Wn.2d 680, 358 P.3d 359 (2015), State v. McFarland, 189 Wn.2d 47, 399 P.3d 1106 (2017), and Houston-Sconiers. Given our conclusion above, we do not reach these issues. And he may direct such arguments to the trial court. But we do note that a court cannot concurrently impose an adult offender's firearm enhancements. See State v. Brown, No. 79954-1-I, slip op. at 2-4 (Wash. May 18, 2020).

were] actually and substantially prejudiced by the alleged error." In re Pers. Restraint of Meippen, 193 Wn.2d 310, 315, 440 P.3d 978 (2019). The petitioner must show that the outcome of their trial "would more likely than not have been different had the alleged error not occurred." Meippen, 193 Wn.2d at 316.

### 1. Confrontation clause

While testifying at trial, a police officer recounted a confession made by one of Ross's co-defendants, Nolan Chouap. Ross raises various issues relating the officer's testimony, arguing that its admission violated his Sixth Amendment right to confront Chouap.[5] The State argues that Ross has not shown actual and substantial prejudice resulting from any violation. We agree with the State.

First, Ross contends that redactions in the testimony failed to protect his identity. While testifying, the officer replaced any instance of Ross's name with a variant of "someone." For example, the officer testified: "[Chouap] said that somebody made a call and that [the guns] were all sold;" "after the incident, [Chouap] and Azariah[6] split up and [] Azariah [was] picked up by someone else;" "[Chouap] believed Azariah [] had called somebody to come pick them up." Ross claims that it is clear, in context, that the "someone" is him. But it is not clear. "Someone" may be an unindicted co-conspirator or another one of Chouap and Ross's co-defendants.[7]

---

[5] The parties disagree over whether Ross preserved this challenge. Assuming without deciding that he did so, as discussed in this section of the opinion, Ross's claim fails because he has not shown actual and substantial prejudice.

[6] Azariah is Azariah Ross, Ross's brother. For clarity, we refer to Azariah by his first name. We mean no disrespect.

[7] Ross and Chouap were co-defendants with Soy Oeung. Oeung, slip op. at 13.

Second, Ross points to Chouap's statement about using a .38 revolver during the burglaries. Ross claims this was the State's strongest evidence as to the firearm enhancements, and that if the officer had properly redacted his name from the confession, the jury may not have found he committed his crimes with a firearm. But Ross also made a confession that the same officer recounted at trial. In that confession, he admitted knowing that his co-conspirators were armed during their crimes. He also stated that if there was a shooting inside the homes that his co-conspirators burglarized, they planned to contact him on a "walkie-talkie." Chouap's confession was thus not the only evidence supporting Ross's firearm enhancements.

Third, Ross claims that although the court instructed the jury to disregard Chouap's confession when deciding whether to convict Ross, the jury likely considered it regardless. But we presume that juries follow a court's instructions. State v. Hopson, 113 Wn.2d 273, 287, 778 P.2d 1014 (1989).

Fourth, Ross argues that references to his brother Azariah's nickname "Azzi" in the officer's recount of Chouap's confession prejudiced him; he says because "Azzi" also resembles his name, Azias, the jury might have confused the two. But when the officer referenced "Azzi," he made clear that he was referring to Azariah, not the petitioner.

Ross bears the burden of showing that any alleged confrontation clause violation caused him actual and substantial prejudice. Assuming without deciding that an error occurred, and that Ross preserved his challenge to it, we conclude he has not met this burden, so his claim fails.

7

2. Prosecutorial misconduct

During closing argument, the State showed the jury a slide that had Ross's name connected by an arrow to the word "guilty."[8] The State also showed slides explaining the legal circumstances under which Ross would be "[s]till guilty" of the charged crimes.[9] Ross claims the slides, when combined with the State's oral argument, constituted improper opinion argument warranting reversal. The State disagrees, and argues that even if it did constitute misconduct, Ross suffered no actual and substantial prejudice. We conclude this claim fails.

To prevail on a prosecutorial misconduct argument, "the defendant must establish both improper conduct by the prosecutor and prejudicial effect." State

---

[8] The slide reads:

    Trafficking in Stolen Property 1

| | |
|---|---|
| Azias was selling it at the time | → Guilty |
| They knew as they aided that the plan was to sell the stolen property | → Guilty |
| Their accomplices were armed as they stole | → Special Verdict Yes |

[9] These slides read:

I was down for a burglary but did
not know they would be armed with a gun
↓
Still guilty of Burglary 1

I was down to rob but did
not know they would be armed with a gun
↓
Still guilty of Robbery 1

I was down to steal but did
not know they would find a gun
↓
Still guilty of Theft of a Firearm

I was down to scare them but did
not know they would do it with a gun
↓
Still guilty of Assault 2

8

v. Pirtle, 127 Wn.2d 628, 672, 904 P.2d 245 (1995). "Prejudice is established only if there is a substantial likelihood the instances of misconduct affected the jury's verdict." Pirtle, 127 Wn.2d at 672. If the claim comes in a PRP, the petitioner must also "prove the alleged misconduct was either a constitutional error that resulted in actual and substantial prejudice or a fundamental defect that resulted in a complete miscarriage of justice." In re Pers. Restraint of Lui, 188 Wn.2d 525, 539, 397 P.3d 90 (2017). "Where there is a failure to object to improper statements, it constitutes a waiver unless the statement is 'so flagrant and ill-intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by a curative instruction to the jury.'" State v. Dhaliwal, 150 Wn.2d 559, 578, 79 P.3d 432 (2003) (quoting State v. Brown, 132 Wn.2d 529, 561, 940 P.2d 546 (1997).

A prosecutor may argue the facts in evidence and reasonable inferences from those facts in their arguments, but may not make prejudicial statements that the record does not support. Dhaliwal, 150 Wn.2d at 577. Prejudicial error occurs only if "'it is clear and unmistakable that counsel is not arguing an inference from the evidence but is expressing a personal opinion.'" State v. McKenzie, 157 Wn.2d 44, 54, 134 P.3d 221 (2006) (quoting State v. Papadopoulos, 34 Wn. App. 397, 400, 662 P.2d 59, review denied, 100 Wn.2d 1003 (1983)).

Ross cites In re Personal Restraint of Glassman in which the prosecutor showed the jury a slide of the defendant's mugshot with the word "GUILTY" superimposed in red letters over his face three times, twice diagonally and once

9

horizontally. 175 Wn.2d 696, 702, 286 P.3d 673 (2012). The defendant's face was battered in the photo. Glassman, 175 Wn.2d at 702. The prosecutor also stated that the defendant was guilty as charged. Glassman, 175 Wn.2d at 702. Our Supreme Court held that "[b]y expressing his personal opinion of Glassman's guilt through both his slide show and his closing arguments, the prosecutor engaged in misconduct." Glassman, 175 Wn.2d at 707. The court also held there was a substantial likelihood that this misconduct affected the jury's verdict. Glassman, 175 Wn.2d at 708. The court reasoned that it would be highly prejudicial for a prosecutor to shout in closing argument that a defendant is "guilty, guilty, guilty!" Glassman, 175 Wn.2d at 708. The court reasoned that "[d]oing this visually through use of slides showing Glassman's battered face and superimposing red capital letters (red, the color of blood and the color used to denote losses) is even more prejudicial." Glassman, 175 Wn.2d at 708. The court noted that "'[v]isual arguments manipulate audiences by harnessing rapid unconscious or emotional reasoning processes and by exploiting the fact that we do not generally question the rapid conclusions we reach based on visually presented information.'" Glassman, 175 Wn.2d at 708 (quoting Lucille A. Jewel, Through a Glass Darkly: Using Brain and Visual Rhetoric to Gain a Professional Perspective on Visual Advocacy, 19 S. CAL. INTERDISC. L.J. 237, 289 (2010)).

Ross argues that here, as in Glassman, the State's slides combined with its oral argument constituted prosecutorial misconduct warranting reversal. The State's slides here are distinguishable from the slide in Glassman. These slides explain the factual circumstances under which the jury could find Ross guilty, and

10

do not merely assert Ross's guilt. And unlike in Glassman, the slides did not include a battered picture of the defendant and they did not use color and capital letters to accentuate its message. The slides were not improper.

And even assuming any oral assertions of guilt were improper, Ross does not argue that the oral assertions were prejudicial on their own. Indeed, he makes clear that his claim of prosecutorial misconduct depends on the combination of the slides with the oral assertions of guilt.[10] Thus, his prosecutorial misconduct claim fails.

3. Special verdict forms

Ross argues his trial counsel performed ineffectively by failing to object to jury instructions and special verdict forms that did not properly advise the jury of the burden of proof for his firearm enhancements. We disagree.

Defendants have a constitutional right to effective assistance of counsel. In re Pers. Restraint of Tsai, 183 Wn.2d 91, 99, 351 P.3d 138 (2015); U.S. CONST. amend. 6; CONST. art. I, § 22. A defendant asserting ineffective assistance of counsel bears the burden of establishing that (1) their trial counsel performed deficiently, and (2) the deficient performance prejudiced the defense. State v. Carson, 184 Wn.2d 207, 216, 357 P.3d 1064 (2015). To show that counsel performed deficiently, Ross must show that trial counsel's performance

_____

[10] Ross objected to the slides at trial, but not to any of the State's oral assertions of his guilt. Because of this, the State treats Ross's slides claim as different from the oral assertions claim. The State applies an "actual and substantial prejudice" standard to the former, and a "flagrant and ill-intentioned" standard to the latter. Ross disputes this approach and argues we should consider the slides, when combined with the oral assertions of guilt, as one claim of prosecutorial misconduct, and apply the "actual and substantial prejudice" standard. But we need not reach the question of which prejudice standard applies since the slides were not improper.

"fell below an objective standard of reasonableness." State v. Reichenbach, 153 Wn.2d 126, 130, 101 P.3d 80 (2004). To show prejudice, Ross must show "'that there is a reasonable possibility that, but for counsel's deficient performance, the outcome of the proceeding would have been different.'" Carson, 184 Wn.2d at 227 (citing State v. Kyllo, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). We strongly presume that counsel performed effectively. Reichenbach, 153 Wn.2d at 130.

"[A] sentencing court violates a defendant's right to a jury trial if it imposes a firearm enhancement without a jury authorizing the enhancement by explicitly finding that, beyond a reasonable doubt, the defendant committed the offense while so armed." State v. Williams-Walker, 167 Wn.2d 889, 898, 225 P.3d 913 (2010) (citing State v. Recuenco, 163 Wn.2d 428, 440, 180 P.3d 1276 (2008)).

Ross cites Williams-Walker in which our Supreme Court reviewed the imposition of firearm enhancements on three defendants. 167 Wn.2d at 893–95. In each case, the jury had submitted a special verdict form finding that the defendant had committed their crime while armed with a deadly weapon. Williams-Walker, 167 Wn.2d at 893–95. In each case, the sentencing court imposed a firearm enhancement. Williams-Walker, 167 Wn.2d at 893–95. Our Supreme Court held that for a court to impose a firearm enhancement, the jury must have submitted a special verdict form finding that the defendant had committed their crime while armed with a firearm. Williams-Walker, 167 Wn.2d at 900. Because the trial courts involved imposed firearm enhancements without such findings, they violated the defendants' rights to a jury trial. Williams-Walker,

167 Wn.2d at 899–900.

Ross analogizes to Williams-Walker, and argues that the imposition of firearm enhancements violated his right to a jury trial because the trial court did not instruct the jury to find beyond a reasonable doubt that he committed his crimes while armed with a firearm. We disagree.

Here, unlike in Williams-Walker, the jury submitted special verdict forms finding that Ross committed his crimes while armed with a firearm. Oeung, slip op. at 18 ("The jury found that for all of the counts with a firearm enhancement, the enhancement applied, answering 'yes' on the special verdict forms.").[11] While the special verdict forms do not include reasonable doubt language, the trial court instructed the jury that "[i]n order to answer a special verdict form 'yes,' all twelve of you must unanimously be satisfied beyond a reasonable doubt that 'yes' is the correct answer." The trial court properly instructed the jury as to the burden of proof for the firearm enhancements and the jury found that the crimes

---

[11] Ross submitted only two of the pertinent special verdict forms into the record for our review. Normally, we need not consider arguments unsupported by the record. State v. Lough, 70 Wn. App. 302, 335, 853 P.2d 920 (1993), aff'd, 125 Wn.2d 847 (1995). But because, in his first appeal, Division Two of this court addressed a similar issue related to the jury instructions for the special verdict forms, we can conclude that the jury found in a special verdict form that each crime was committed with a firearm. See Oeung, slip op. at 18. The relevant forms in the record state:

QUESTION ONE: Was the defendant or an accomplice armed with a deadly weapon at the time of the commission of the crime in Count XI?
ANSWER: YES (Write "yes" or "no")
QUESTION TWO: Was the deadly weapon a firearm?
ANSWER: YES (Write "yes" or "no")

In the two special verdict forms submitted to the court, the jury found that Ross or an accomplice committed the associated crime with a firearm.

Ross also has attached to his motion for reconsideration additional materials not contained in the record on review. This constitutes an unauthorized appendix. RAP 10.3(a)(8). We strike the material.

were committed with a firearm. Thus, Ross's trial counsel did not perform deficiently by failing to object to the jury instructions and special verdict forms.

4. Cumulative error

Ross argues that cumulative error warrants reversal of his convictions. "'The cumulative error doctrine applies where a combination of trial errors denies the accused a fair trial even where any one of the errors, taken individually, may not justify reversal.'" In re Pers. Restraint of Yates, 177 Wn.2d 1, 65–66, 296 P.3d 872 (2013) (quoting In re Det. Of Coe, 175 Wn.2d 482, 515, 286 P.3d 29 (2012). But because Ross's individual claims lack merit, no cumulative error occurred.

5. Resentencing

In his PRP, Ross argues that he is entitled to resentencing for three reasons. First, he argues the trial court failed to consider his youth as a mitigating factor as required by State v. O'Dell, 183 Wn.2d 680, 358 P.3d 359 (2015). Second, he argues the trial court failed to consider concurrent imposition of firearm enhancements. Third, he argues his sentence is unconstitutional under Houston-Sconiers. He also argues his trial counsel performed ineffectively by failing to make the first two of these arguments to the trial court. While Ross is entitled to resentencing based on the arguments raised in his direct appeal, we conclude that the resentencing claims in Ross's PRP fail.[12]

---

[12] Ross also claims the State has conceded that he is entitled to resentencing. Nothing in the State's briefing suggests this, except for the concluding line of the State's response to his PRP. This appears to be a typographical error since no other part of the State's briefing suggests this, and its arguments make clear it opposes resentencing.

a. O'Dell

Ross argues the trial court abused its discretion by failing to consider his youth as a meaningful factor warranting an exceptional downward sentence. He was 19 and 20 years old at the times of the crimes. He also argues his trial counsel performed ineffectively by failing to argue for an exceptional downward sentence.

"'While no defendant is entitled to an exceptional sentence below the standard range, every defendant is entitled to ask the trial court to consider such a sentence and to have the alternative actually considered.'" State v. Bunker, 144 Wn. App. 407, 421, 183 P.3d 1086 (2008) (quoting State v. Grayson, 154 Wn.2d 333, 342, 111 P.3d 1183 (2005)). "A trial court's erroneous belief that it lacks the discretion to depart downward from the standard sentencing range is itself an abuse of discretion." Bunker, 144 Wn. App. at 421.

In O'Dell, the defendant asked the trial court to impose an exceptional downward sentence because his capacity to appreciate the wrongfulness of his conduct was significantly impaired by his youth. 183 Wn.2d at 685. The trial court refused because it believed it lacked the discretion to do so. O'Dell, 183 Wn.2d at 686. Our Supreme Court reversed, holding that while age does not constitute a "per se mitigating factor automatically entitling every youthful defendant to an exceptional sentence," courts have the discretion to consider it as a mitigating factor. O'Dell, 183 Wn.2d at 695–96.

Ross concedes he did not request an exceptional downward sentence at his original sentencing. Thus, unlike in O'Dell, the trial court did not refuse to

15

consider an exceptional mitigated sentence based on his youth. See also In re Pers. Restraint of Light-Roth, 191 Wn.2d 328, 337, 422 P.3d 444 (2018) (noting that a petitioner could have, but did not, argue for an exceptional mitigated sentence based on their youth). We also note that Ross bears the burden of showing by a preponderance of the evidence that the trial court would have imposed a lesser sentence if it had the discretion to depart from the standard sentencing range and mandatory sentence enhancements. Meippen, 193 Wn.2d at 317. And unlike O'Dell, the trial court here expressed that it would not impose an exceptional downward sentence even if it could ("I would not have exercised discretion in identifying a mitigation—a mitigating reason and would not have imposed an exceptional sentence even if there were one available based on the structure of the firearm enhancements."). Given this statement, Ross has not carried his burden. Ross's circumstances differ significantly from those in O'Dell, and he has not shown actual and substantial prejudice. Even assuming an abuse of discretion occurred, his claim for resentencing on this ground fails.[13]

Since Ross has not shown prejudice, his claim for ineffective assistance of counsel on this ground also fails. See Carson, 184 Wn.2d at 216.

b. Firearm enhancements

Ross argues the trial court abused its discretion by failing to recognize its

---

[13] The trial court sentenced Ross before the issuance of O'Dell. Ross argues we should retroactively apply O'Dell to his sentence. Our Supreme Court has not yet decided whether O'Dell applies retroactively, and we need not do so here, since even if it does, Ross has not shown actual and substantial prejudice. But see Light-Roth, 191 Wn.2d at 341 (González, J., concurring in result) (O'Dell applies retroactively because it interpreted a provision of the Sentencing Reform Act).

discretion to impose the firearm enhancements concurrently, and not consecutively. He also argues his trial counsel performed ineffectively by failing to seek concurrent enhancements. We conclude the court did not have this discretion, so Ross's claim fails.

Under State v. McFarland, a court may impose firearm convictions concurrently if "standard range consecutive sentencing for multiple firearm-related convictions 'results in a presumptive sentence that is clearly excessive in light of the purpose of [the Sentencing Reform Act].'" 189 Wn.2d 47, 55, 399 P.3d 1106 (2017) (quoting RCW 9.94.535(1)(g)). But firearm enhancements must run consecutively when imposed on adults. State v. Brown, No. 79954-1-I, slip op. at 2-4 (Wash. May 18, 2020); RCW 9.94A.533(3)(e).

Since the trial court did not have discretion to concurrently impose the firearm enhancements, Ross's trial counsel did not perform ineffectively by failing to request such.

### c. Houston-Sconiers

Ross also claims his sentence is unconstitutional under Houston-Sconiers. We disagree.

In Houston-Sconiers, our Supreme Court held that, when applied to juveniles, the mandatory nature of firearm enhancements violates the federal constitution's Eighth Amendment. 188 Wn.2d at 25–26. Thus, Houston-Sconiers holds that, when sentencing juveniles, courts have the discretion to impose sentences below those mandated by applicable firearm enhancements. 188 Wn.2d at 21. But this holding applies only to juveniles. Houston-Sconiers, 188

17

Wn.2d at 21; see also Brown, slip op. at 3.  Ross was not a juvenile when he committed these crimes, so his claim of unconstitutionality fails.

We remand for the trial court to consider whether to grant Ross a new sentencing hearing.  We deny the PRP.

Chun, J.

WE CONCUR:

Bowman, J.          Andrus, A.C.J.