**NOTICE:  SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Personal Restraint of<br><br>THEODORE R. RHONE,<br><br>              Petitioner. | No. 54167-0-II<br>(consolidated with No. 54487-3-II)<br><br><br>PUBLISHED OPINION |

GLASGOW, C.J.—Theodore R. Rhone seeks relief from personal restraint imposed following a 2005 conviction for first degree robbery. At trial, Rhone objected to the State's use of a peremptory strike to remove the only remaining Black venire member from his jury pool. The trial court recognized this as a challenge under *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), found that Rhone failed to establish a prima facie case of purposeful discrimination, and denied the challenge.

On appeal, Rhone asked the courts to recognize a bright-line rule that whenever the State uses a peremptory challenge to strike the only or last remaining venire member of a cognizable racial group, that action alone is sufficient to establish prima facie discrimination. In a fractured opinion, the Washington Supreme Court denied Rhone's request. But four dissenting justices would have adopted the bright-line rule, and a fifth justice indicated they would support the proposed bright-line rule going forward. Eventually, in *City of Seattle v. Erickson*, 188 Wn.2d 721, 398 P.3d 1124 (2017), the Supreme Court adopted the bright-line rule proposed by Rhone. He filed a personal restraint petition (PRP), arguing this was a significant change in the law, material to his conviction, which should apply retroactively.

No. 54167-0-II

The next year, the Supreme Court decided *State v. Jefferson*, 192 Wn.2d 225, 230, 429 P.3d 467 (2018) (plurality opinion), changing our state's *Batson* inquiry to "ask whether an objective observer could view race or ethnicity as a factor in the use of the peremptory strike," instead of whether the State purposefully discriminated on the basis of race. Rhone incorporated *Jefferson* into his PRP. We dismissed the PRP under the mixed petition rule, and the Supreme Court denied discretionary review.

Now, Rhone brings a new PRP and again argues that *Erickson* and *Jefferson* were significant changes in the law, material to his conviction, which should apply retroactively. We agree with Rhone that *Erickson* and *Jefferson* were significant changes in the law and that they are material to his conviction. We also conclude that because *Erickson* and *Jefferson* established new constitutional rules that are at least partly substantive, they should apply retroactively. Therefore, Rhone's PRP falls within RCW 10.73.100(6), and the one-year time bar does not apply.

Because this is a successive petition, however, we cannot review it. Because we conclude this is a timely request for relief that has not previously been considered and determined on the merits, we transfer Rhone's PRP to the Supreme Court for consideration under RAP 16.4(d).

PROCEDURAL HISTORY

I. TRIAL AND DIRECT APPEAL

In 2005, Rhone, who is Black, was tried for first degree robbery, among other offenses, after he went through a "drive-thru window[,] . . . displayed a gun[,] and demanded money for a debt." *State v. Rhone*, noted at 137 Wn. App. 1046, 2007 WL 831725, at *1 (*Rhone* I). Before the trial began, Rhone, "acting pro se," objected to the jury selection process on the ground that the State had used a peremptory strike to remove the only remaining Black juror from the venire. *Id.*

No. 54167-0-II

at *3.[1] Rhone personally addressed the court, saying, "'It's not a jury of my peers. I'm -- I mean, I am an African-American [B]lack male, 48 years old. I would like someone of culture, of color, that has -- perhaps may have had to deal with [improprieties] and so forth, to understand what's going on and what could be happening in this trial.'" *State v. Rhone*, 168 Wn.2d 645, 649, 229 P.3d 752 (2010) (*Rhone* II), *abrogated by Erickson*, 188 Wn.2d 721.[2]

The trial court found that Rhone failed to make a prima facie showing of purposeful racial discrimination, as required by *Batson*, and it denied Rhone's challenge. *Rhone* I, 2007 WL 831725, at *3.[3] The jury found Rhone guilty of possession of a controlled substance with intent to deliver, unlawful possession of a firearm, first degree robbery, and bail jumping.

On direct appeal, Rhone proposed a bright-line rule: where the State peremptorily dismisses the only or last remaining venire member of a cognizable racial group, the trial court should always find a prima facie case of discrimination and move past the first step of the *Batson*

---

[1] "The jury venire included two African Americans. One was excused for cause by agreement of both parties." *Rhone* I, 2007 WL 831725, at *3.

[2] Earlier judicial opinions used the term "African-American" to describe both Rhone and the peremptorily struck venire member. Rhone identified himself as "'an African-American [B]lack male.'" *Rhone* II, 168 Wn.2d at 649. However, it is not clear from our record that the venire member was given an opportunity to self-identify. Because the term "African-American" implies a specific ancestry and nationality, we use the more inclusive term "Black" in this opinion.

[3] Under a traditional *Batson* analysis, the defendant must first establish a prima facie case of purposeful discrimination by showing that they are "a member of a cognizable racial group," "that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race," and that the facts and circumstances "raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race." 476 U.S. at 96. Second, if the trial court finds that the defendant made this showing, "the burden shifts to the State to come forward with a neutral explanation for challenging [B]lack jurors." *Id.* at 97. Third, the trial court will "determine if the defendant has established purposeful discrimination." *Id.* at 98.

3

No. 54167-0-II

analysis. *Id.* at *6. This court explained, "We are generally hesitant to find discriminatory motivation in numbers analysis alone." *Id.* at *7. We recognized, "[I]t is possible that a prosecutor's dismissal of the only eligible member of a constitutionally cognizable group can imply a discriminatory motive," but ultimately we concluded that, on the record presented, Rhone failed to show the trial court abused its discretion in denying his *Batson* challenge. *Id.* We affirmed all of Rhone's convictions. *Id.* at *14.

The Supreme Court accepted review. In its lead opinion, signed by four justices, the court concluded that "a bright-line rule superseding a trial court's discretion in determining whether a defendant has established a prima facie case of discrimination is inconsistent with *Batson*." *Rhone II*, 168 Wn.2d at 653. A dissenting opinion, also signed by four justices, would have adopted the "bright line rule that a defendant establishes a prima facie case of discrimination when, as here, the record shows that the State exercised a peremptory challenge against the sole remaining venire member of the defendant's constitutionally cognizable racial group." *Id.* at 659 (Alexander, J., dissenting). The ninth justice wrote a two-sentence concurrence stating, "I agree with the lead opinion in this case. However, going forward, I agree with the rule advocated by the dissent." *Id.* at 658 (Madsen, C.J., concurring). The court therefore affirmed. *Id.* (lead opinion and Madsen, C.J., concurring).

## II. PRIOR PRPS

Rhone's convictions became final in 2010. Since 2010, Rhone has filed several PRPs. One PRP challenged the trial court's denial of Rhone's motion to suppress evidence seized during a warrantless search of his car. The Supreme Court granted Rhone's PRP and remanded for our reconsideration of the suppression order in light of new precedent from both the federal and state

4

No. 54167-0-II

supreme courts.[4] *State v. Rhone*, No. 46960-0-II, slip op. at 5 (Wash. Ct. App. July 6, 2016) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2046960-0-II%20Unpublished%20 Opinion.pdf (*Rhone* III). In light of these new cases, we concluded that the warrantless search of Rhone's car incident to his arrest was unlawful "because Rhone had been secured, he could not access the interior of the vehicle, he posed no safety risk, and the vehicle contained no evidence that could be concealed or destroyed." *Id.* at 8. We held this error was not harmless with respect to Rhone's convictions for unlawful possession of a controlled substance with intent to deliver and unlawful possession of a firearm, and we remanded for the trial court to vacate those two convictions. *Id.* at 12-13. We did not disturb Rhone's conviction for first degree robbery. *Id.* at 12.

While Rhone's case was on remand, the Supreme Court decided *Erickson*, officially adopting "the bright-line rule first espoused by the dissent in [*Rhone* II]." 188 Wn.2d at 724. Rhone filed a CrR 7.8 motion to vacate his new judgment and sentence, arguing *Erickson* constituted a significant change in the law that was material to his robbery conviction. The trial court transferred the CrR 7.8 motion, along with a separate motion for a new trial based on a jury instruction issue, "to this court as a single PRP." *State v. Rhone*, No. 51517-2-II (consolidated with No. 51797-3-II), slip op. at 6 (Wash. Ct. App. Dec. 17, 2019) (unpublished), https://www.courts.wa.gov/ opinions/pdf/D2%2051517-2-II%20Unpublished%20Opinion.pdf (*Rhone* IV). Rhone also sought

---

[4] This new precedent included *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009), *State v. Snapp*, 174 Wn.2d 177, 275 P.3d 289 (2012), and *State v. Patton*, 167 Wn.2d 379, 219 P.3d 651 (2009).

No. 54167-0-II

to directly appeal his new judgment and sentence. *Id.* We consolidated that direct appeal with the transferred PRP. *Id.*[5]

Rhone argued "recent Washington cases applying *Batson*" constituted a material and significant change in the law that fell within an exception to the one-year time bar for collateral attacks. *Id.* at 12; *see* RCW 10.73.090(1), .100(6). But we concluded Rhone's jury instruction claim was time barred and therefore dismissed his entire PRP as a mixed petition. *Rhone* IV, 51517-2-II, slip op. at 13. "We accordingly [did] not address Rhone's remaining claims related to his *Batson* challenge." *Id.*

The Supreme Court denied discretionary review. The deputy commissioner clarified in his ruling denying review, "I do not consider the change in law issue properly raised here. . . . If Mr. Rhone wishes to argue the change in law issue, he may do so in a personal restraint petition that raises solely that ground for relief." Ruling Den. Review, *In re Pers. Restraint of Rhone*, No. 98109-4, at 4 n.2 (Wash. May 20, 2020); *see also In re Pers. Restraint of Hankerson*, 149 Wn.2d 695, 702, 72 P.3d 703 (2003) (explaining that a petitioner may refile a timely claim dismissed as part of a "mixed petition" under RCW 10.73.100 "because by definition any claim that is not time barred may be refiled without danger of untimeliness").

---

[5] Rhone again raised the claim that *Erickson* was a significant change in the law and an exception to the one-year time bar for collateral relief in a statement of additional grounds for review, along with a claim that GR 37, a new court rule intended to "eliminate the unfair exclusion of potential jurors based on race or ethnicity," was also a significant change in the law and an exception to the one-year time bar. GR 37(a). After *Jefferson* was decided, Rhone's counsel filed a supplemental brief, arguing *Erickson* and *Jefferson* were *both* material and significant changes in the law.

No. 54167-0-II

### III. CURRENT PRP

Rhone then submitted two new PRPs, each arguing that *Erickson* and *Jefferson* were significant changes in the law, material to his conviction, which should apply retroactively. We consolidated Rhone's PRPs.

### ANALYSIS

We will grant appropriate relief where a petitioner shows that they are under unlawful restraint. RAP 16.4(a). Restraint is unlawful if the petitioner's underlying conviction was obtained in violation of the constitution or "[t]here has been a significant change in the law, whether substantive or procedural, which is material to the conviction, . . . and sufficient reasons exist to require retroactive application of the changed legal standard." RAP 16.4(c)(2), (4). But we must first determine whether the PRP is untimely or successive.

### I. TIMELINESS

A collateral attack cannot be filed "more than one year after the judgment becomes final if the judgment and sentence is valid on its face and was rendered by a court of competent jurisdiction," RCW 10.73.090(1), unless one of six specific exceptions applies, *see* RCW 10.73.100. One exception applies where "[t]here has been a significant change in the law, whether substantive or procedural, which is material to the conviction, . . . [and a court] determines that sufficient reasons exist to require retroactive application of the changed legal standard." RCW 10.73.100(6). When these circumstances exist, "there is no time bar." *In re Pers. Restraint of Garcia-Mendoza*, 196 Wn.2d 836, 841, 479 P.3d 674 (2021).

7

No. 54167-0-II

Rhone submitted this PRP more than one year after his conviction became final. But he argues it is timely because it falls under RCW 10.73.100(6)—it is based on a significant change in the law that is material to his conviction and should apply retroactively. We agree.[6]

A.  Significant Change in the Law

A "significant change in the law" for purposes of RCW 10.73.100(6) occurs "'when an intervening appellate decision overturns a prior appellate decision that was determinative of a material issue.'" *In re Pers. Restraint of Ali*, 196 Wn.2d 220, 233, 474 P.3d 507 (2020) (quoting *State v. Miller*, 185 Wn.2d 111, 114, 371 P.3d 528 (2016)), *cert. denied*, *Washington v. Ali*, 141 S. Ct. 1754 (2021).

Until *Erickson* was decided, the rule articulated by the lead opinion in *Rhone* II, that whether the defendant established a prima facie case of discrimination is always a matter of trial court discretion, remained the applicable rule in Washington. *See State v. Meredith*, 178 Wn.2d 180, 182, 306 P.3d 942 (2013), *abrogated by Erickson*, 188 Wn.2d 721. *Erickson* then adopted the *Rhone* II dissent's bright-line rule and held that "the peremptory strike of a juror who is the only

---

[6] Our analysis follows a slightly different path than the one advocated for in Rhone's PRP. Rhone argues that *Erickson* and *Jefferson* were significant changes in the law because they abrogated *Rhone* II, but they were *not* new rules requiring a full retroactivity analysis under *Teague v. Lane*, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989), "because under the equal protection clause it has always been impermissible to make a race based strike of a person of color." PRP at 2; *see also id.* at 16-20 (applying *In re Pers. Restraint of Yung-Cheng Tsai*, 183 Wn.2d 91, 351 P.3d 138 (2015)); *cf. Crittenden v. Chappell*, 804 F.3d 998, 1007-09 (9th Cir. 2015) (explaining a rule is not new under *Teague* where it clarifies a step of the existing *Batson* analysis). One might also argue that because five justices expressed their willingness to adopt Rhone's proposed bright-line rule for future cases when *Rhone* II was decided, *Erickson* did not establish a new rule. *See Erickson*, 188 Wn.2d at 732 ("We now follow our signal in *Rhone* and adopt a bright-line rule."). It may be possible to conclude that the rules announced in *Erickson* and *Jefferson* did not break new ground.

Nevertheless, for the reasons discussed below, we conclude these rules were new under *Teague* and engage in a retroactivity analysis.

8

No. 54167-0-II

member of a cognizable racial group constitutes a prima facie showing of racial discrimination requiring a full *Batson* analysis by the trial court." 188 Wn.2d at 724. In doing so, it "alter[ed] the *Batson* framework" and abrogated several decisions, including *Rhone* II. *Id.* at 734. Because it abrogated decisions that previously determined how trial courts responded to *Batson* challenges, *Erickson* was a significant change in the law.

"The 'significant change' language [of RCW 10.73.100(6)] is intended to *reduce* procedural barriers to collateral relief in the interests of fairness and justice." *In re Pers. Restraint of Yung-Cheng Tsai*, 183 Wn.2d 91, 104, 351 P.3d 138 (2015). A failure to raise an "apparently unavailable argument cannot render [the petitioner's] PRP procedurally barred." *Id.* at 107. We briefly note that although he did not receive the benefit of it, Rhone *did* raise this exact argument on direct review. *See Rhone* II, 168 Wn.2d at 652. He proposed the bright-line rule that the Supreme Court eventually adopted. And although it was Rhone's counsel who argued specifically for the bright-line rule on appeal, it was Rhone himself who objected when the State struck the only remaining Black venire member from his jury pool. *See id.* at 648-49. Accordingly, this case in particular compels us to conclude that "the interests of fairness and justice" are served by classifying this change in the law as significant. *Yung-Cheng Tsai*, 183 Wn.2d at 104.

*Jefferson* was also a significant change in the law because it again changed how trial courts must respond to *Batson* challenges. Addressing the impact of its decision, the lead opinion explained, "[W]e now modify our three-step *Batson* test by replacing *Batson*'s current inquiry at step three with a new inquiry." *Jefferson*, 192 Wn.2d at 229 (lead opinion); *see also id.* at 252 (Yu, J., concurring) (agreeing with the lead opinion's analysis). Before *Jefferson*, the trial court's

No. 54167-0-II

application of the third step was still governed solely by the United States Supreme Court's direction in *Batson*.

B.     Materiality

*Erickson* and *Jefferson* are both material to Rhone's conviction. Before his trial in 2005, Rhone challenged the jury selection process. On direct appeal, he argued that the prosecutor's use of a peremptory strike to remove the last Black venire member was enough to establish a prima facie case of racial discrimination. At the time, the trial court had discretion to find prima facie discrimination on this basis, but its conclusion that Rhone failed to show discrimination was not clearly erroneous. If Rhone's case occurred post-*Erickson*, the trial court would be required to find prima facie evidence of discrimination based on Rhone's objection and to conduct a full *Batson* analysis. Under *Erickson*, Rhone would have received the benefit of a more thorough investigation into the jury selection process used in his case.

*Jefferson* changed what this investigation would entail. It shifted "the relevant question" from whether the proponent of the strike was purposefully discriminating on the basis of race to whether "'an objective observer could view race or ethnicity as a factor in the use of the peremptory challenge.'" *Jefferson*, 192 Wn.2d at 249 (lead opinion); *see also id.* at 252 (Yu, J., concurring). This change is material to Rhone's conviction because, as the Supreme Court has now recognized, "differential treatment of the sole African-American juror . . . 'could' support an inference of implicit bias," even if it were not enough to establish purposeful discrimination. *Id.* at 250-51.

10

No. 54167-0-II

C.      Retroactivity

When determining whether a rule applies retroactively, Washington courts apply the test articulated by the United States Supreme Court in *Teague v. Lane*, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989). *See Ali*, 196 Wn.2d at 236. "Under *Teague*, a new rule applies retroactively on collateral review only if it is a new substantive rule of constitutional law or a watershed rule of criminal procedure." *Id.*

1.      *Erickson* and *Jefferson* announced new constitutional rules

A rule is "new" for purposes of a *Teague* analysis if it breaks new ground or imposes a new obligation. *Yung-Cheng Tsai*, 183 Wn.2d at 104. For example, in *State v. Houston-Sconiers*, 188 Wn.2d 1, 9, 391 P.3d 409 (2017), the Supreme Court announced that trial courts "*must* consider youth" when sentencing juveniles in adult court and "*must* have discretion to impose any exceptional sentence downward based on youth." *Ali*, 196 Wn.2d at 236. This was a "new" rule because reasonable jurists could previously disagree on whether trial courts had discretion to depart from a standard range sentence for a juvenile defendant and whether they should consider youthfulness when sentencing; "no prior precedent *required* courts to do so." *Id.*

Prior to *Erickson*, trial courts could, in their discretion, find that a criminal defendant established a prima facie case of discrimination based on the State's decision to strike the only member of a cognizable racial group from the jury pool, but the trial court was not *required* to do so. *See Rhone* II, 168 Wn.2d at 653. *Erickson* then held that under these circumstances, trial courts "*must* recognize a prima face case of discriminatory purpose." 188 Wn.2d at 734 (emphasis added). Thus, *Erickson* announced a new rule in a manner similar to *Houston-Sconiers*. And the new rule was constitutional. The court justified its adoption by stating that "'[t]he Constitution forbids

11

No. 54167-0-II

striking even a single prospective juror for a discriminatory purpose.'" *Id.* at 732 (alteration in original) (internal quotation marks omitted) (quoting *Snyder v. Louisiana*, 552 U.S. 472, 478, 128 S. Ct. 1203, 170 L. Ed. 2d 175 (2008)).

The lead opinion in *Jefferson* also "create[d] a new constitutional rule." 192 Wn.2d at 255 (Madsen, J., dissenting in part). There, the Supreme Court altered the third step of the *Batson* analysis. The trial court is no longer tasked only with determining whether the proponent of the strike purposefully discriminated on the basis of race; it must now consider whether purposeful discrimination *or* implicit bias influenced the peremptory strike. *Id.* at 249 (lead opinion); *see also id.* at 252 (Yu, J., concurring). Like the rule announced in *Erickson*, this rule imposed a new obligation on the trial court. The trial court's inquiry changed from a factual one to an objective one, considering whether "the average, reasonable person . . . who is aware of the history of explicit race discrimination in America and aware of how that impacts our current decision-making in nonexplicit, or implicit, unstated, ways" could view race as a factor influencing the strike. *Id.* at 249-50. The Supreme Court correspondingly changed the appellate standard of review from a deferential "'clearly erroneous'" standard to de novo review. *Id.* at 250. This alteration was intended "to meet the goals of *Batson*" and eradicate the "evil of racial discrimination," consistent with the equal protection guarantee of the Fourteenth Amendment to the United States Constitution. *Id.* at 249.

2.      *Erickson* and *Jefferson* announced partly substantive rules

*Erickson* and *Jefferson* announced partly substantive rules because rules directed at eliminating racial discrimination in jury selection function to eliminate racial discrimination in jury verdicts. As the United States Supreme Court has recognized, "[D]iscriminatory selection

No. 54167-0-II

procedures make 'juries ready weapons for officials to oppress those accused individuals'" who are members of underrepresented populations. *Batson*, 476 U.S. at 86-87 n.8 (quoting *Akins v. Texas*, 325 U.S. 398, 408, 65 S. Ct. 1276, 89 L. Ed. 1692 (1945) (Murphy, J., dissenting)). In contrast, juries whose diverse members are not excluded serve as a check on government power, improve faith in the judicial system, and most importantly, provide for more accurate verdicts.

*Teague* defined "procedural rules" as those "'designed to enhance the accuracy of a conviction or sentence by regulating the *manner of determining* the defendant's culpability.'" *Ali*, 196 Wn.2d at 237 (internal quotation marks omitted) (quoting *Montgomery v. Louisiana*, 577 U.S. 190, 201, 136 S. Ct. 718, 193 L. Ed. 2d 599 (2016)). It defined "substantive rules" as those that "'set forth categorical constitutional guarantees that place certain criminal laws and punishments altogether beyond the State's power to impose,'" including "'rules prohibiting a certain category of punishment for a class of defendants because of their status or offense.'" *Id.* (internal quotation marks omitted) (quoting *Montgomery*, 577 U.S. at 201).

Criminal defendants are guaranteed the right to trial by an impartial jury as a manner of determining their guilt. U.S. CONST. amend. VI, XIV; WASH. CONST. art. I, §§ 21, 22. Dissenting from the United States Supreme Court's decision not to apply *Batson* retroactively, Justice Thurgood Marshall wrote that "where the prosecution uses its peremptory challenges to cull [B]lack and Hispanic jurors from the jury empaneled for the trial of a [B]lack defendant, the threat to the accuracy of the trial is significant and unacceptable." *Allen v. Hardy*, 478 U.S. 255, 263-64, 106 S. Ct. 2878, 92 L. Ed. 2d 199 (1986) (Marshall, J., dissenting). We agree.

Regardless of the defendant's race, studies have shown that "[d]iverse juries have longer deliberations, discuss more case facts, make fewer inaccurate statements, and members are more

13

No. 54167-0-II

likely to correct inaccurate statements. In short, jury and jury pool diversity impact the equity and justice of jury verdicts." WASH. SUP. CT. GENDER & JUSTICE COMM'N, 2021: HOW GENDER AND RACE AFFECT JUSTICE NOW: FINAL REPORT 131 (Sept. 2021) (2021 Gender Justice Study).

"When any large and identifiable segment of the community is excluded from jury service, the effect is to remove from the jury room qualities of human nature and varieties of human experience, the range of which is unknown and perhaps unknowable." *Peters v. Kiff*, 407 U.S. 493, 503, 92 S. Ct. 2163, 33 L. Ed. 2d 83 (1972) (plurality opinion). "It is not necessary to assume that the excluded group will consistently vote as a class in order to conclude, as we do, that its exclusion deprives the jury of a perspective on human events that may have unsuspected importance in any case that may be presented." *Id.* at 503-04. "Jurors tend to rely on their lived experiences when participating in jury deliberations; therefore, having greater perspectives can yield a discussion that is more well-balanced." Peter A. Collins & Brooke Miller Gialopsos, *Answering the Call: An Analysis of Jury Pool Representation in Washington State*, 22 CRIMINOLOGY, CRIM. JUST., L. & SOC'Y no. 1, 2021, at 6.

Jury selection is procedural in that it influences how a defendant's culpability is determined, but the jury trial right is "no mere procedural formality." *Blakely v. Washington*, 542 U.S. 296, 306, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). It is "a fundamental reservation of power in our constitutional structure" that "ensures the people's ultimate control" in the justice system. *Id.* The jury trial right "finds its roots in the core principles upon which this nation was founded." *State v. Evans*, 154 Wn.2d 438, 445, 114 P.3d 627 (2005). And the process of jury selection implicates multiple foundational constitutional rights, including equal protection and due process. *See Peters*, 407 U.S. at 498 (plurality opinion) (recognizing that discrimination in jury selection

14

No. 54167-0-II

"offends a number of related constitutional values"). Our Supreme Court has accordingly recognized that where new rules impacting "juror selection procedures" also affect "substantial constitutional rights," they are "partly substantive." *Jefferson*, 192 Wn.2d at 248-49 (lead opinion); *see also id.* at 252 (Yu, J., concurring). Although the Supreme Court made this determination when analyzing whether GR 37 should apply retrospectively as a remedial statute, it went on to incorporate the essence of GR 37 into our constitutional analysis under *Batson*. If GR 37 is partly substantive, a constitutional rule modeled on GR 37 must also be partly substantive.

Discriminatory jury selection "violates a defendant's right to equal protection because it denies [them] the protection that a trial by jury is intended to secure." *Batson*, 476 U.S. at 86. Although the equal protection clause does not guarantee a jury with persons of the defendant's own race, it does provide the defendant with "the right to be tried by a jury whose members are selected pursuant to nondiscriminatory criteria." *Id.* at 85-86. And in addition to violating the defendant's equal protection right, race-based peremptory strikes violate "the equal protection rights of the excluded jurors who are denied a significant opportunity to participate in civic life." *State v. Rhodes*, 82 Wn. App. 192, 195, 917 P.2d 149 (1996). Requiring courts to be sensitive to racial discrimination in peremptory strikes "enforces the mandate of equal protection and furthers the ends of justice." *Batson*, 476 U.S. at 99; *see also Erickson*, 188 Wn.2d at 727 (citing the Washington Constitution's equal protection guarantee when deciding whether Erickson had established "a prima facie case of racial discrimination in violation of equal protection").

Additionally, it is unconstitutional to deprive anyone of their liberty "without due process of law." U.S. CONST. amend. XIV; WASH. CONST. art. I, § 3. "'A fair trial in a fair tribunal is a basic requirement of due process.'" *Peters*, 407 U.S. at 501 (plurality opinion) (quoting *In re*

15

No. 54167-0-II

*Murchison*, 349 U.S. 133, 136, 75 S. Ct. 623, 99 L. Ed. 942 (1955)). "[A] State cannot, consistent with due process, subject a defendant to indictment or trial by a jury that has been selected in an arbitrary and discriminatory manner." *Id.* at 502 (plurality opinion). "'Not only should there be a fair trial, but there should be no lingering doubt about it.'" *State v. Davis*, 141 Wn.2d 798, 825, 10 P.3d 977 (2000) (quoting *State v. Parnell*, 77 Wn.2d 503, 508, 463 P.2d 134 (1969), *abrogated on other grounds by State v. Fire*, 145 Wn.2d 152, 34 P.3d 1218 (2001)).

Rules altering the *Batson* framework are substantive because they safeguard these fundamental constitutional rights and because they function to put discriminatory verdicts, particularly for defendants of color, beyond the State's power to impose. Typically, substantive rules, as defined by *Teague*, prohibit a certain punishment for a certain "'class of defendants,'" such as prohibiting mandatory life without parole sentences for juveniles. *Ali*, 196 Wn.2d at 237 (internal quotation marks omitted) (quoting *Montgomery*, 577 U.S. at 201); *see also Montgomery*, 577 U.S. at 206. Unlike this example, racial discrimination in jury selection violates *any* defendant's constitutional rights, regardless of the defendant's race and the ultimate punishment imposed. For example, in *Peters*, the United States Supreme Court concluded that if the State systematically excluded Black persons from a white petitioner's jury, then the petitioner "was indicted and convicted by tribunals that fail to satisfy the elementary requirements of due process, and neither the indictment nor the conviction can stand." 407 U.S. at 505 (plurality opinion); *see also id.* at 507 (White, J., concurring in judgment) (concurring with decision to permit white petitioner to challenge his conviction because the exclusion of any jurors based on race "reflects the central concern of the Fourteenth Amendment with racial discrimination"). And again,

16

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 54167-0-II

improper exclusion from a jury based on race violates the equal protection rights of the potential juror, just as it violates the rights of the criminal defendant.

Yet, it is not unheard of for states to use juries to oppress people of color specifically. *See, e.g.*, *Ramos v. Louisiana*, ___ U.S. ___, 140 S. Ct. 1390, 1394, 206 L. Ed. 2d 583 (2020) ("Adopted in the 1930s, Oregon's rule permitting nonunanimous verdicts can be . . . traced to the rise of the Ku Klux Klan and efforts to dilute 'the influence of racial, ethnic, and religious minorities on Oregon juries.'" (quoting *State v. Williams*, No. 15-CR-58698 (C. C. Ore., Dec. 15, 2016), App. 104)); Thomas Ward Frampton, *The Jim Crow Jury*, 71 VAND. L. REV. 1593, 1595 (2018) ("Across the South, the exclusion of [B]lack jurors from the jury box, in tandem with the exclusion of [B]lack voters from the ballot box, served as a key lever for the reassertion of white supremacy. . . . [T]he jury box continues to reflect and reproduce racial hierarchies in the United States."). Unless its members are "drawn from the community," a jury cannot "perform its intended function as a check on official power." *Batson*, 476 U.S. at 86-87 n.8.

This is not to say that the oppression is always intentional or purposeful. "[R]ace can subconsciously motivate a peremptory challenge that the attorney genuinely believes is race-neutral." *State v. Saintcalle*, 178 Wn.2d 34, 87-88, 309 P.3d 326 (2013) (González, J., concurring), *abrogated by Erickson*, 188 Wn.2d 721. In practice, "[w]ith limited information and time, and a lack of any reliable way to determine the subtle biases of each prospective juror, attorneys tend to rely heavily on stereotypes and generalizations in deciding how to exercise peremptory challenges." *Id.* at 81. Studies from various jurisdictions have found that, "even after controlling for numerous other potentially relevant factors, race remains highly determinative of peremptory usage." *Id.* at 89. In *Batson*, the Court specified that *purposeful* discrimination denied a defendant

17

No. 54167-0-II

equal protection and a fair jury trial. *See* 476 U.S. at 86. But our Supreme Court has since recognized that "discrimination in this day and age is frequently unconscious and less often consciously purposeful. That does not make it any less pernicious." *Saintcalle*, 178 Wn.2d at 48-49.

As mentioned above, we know that jury diversity impacts jury verdicts, and this is especially true for defendants of color. Louisiana's prior practice of allowing nonunanimous jury verdicts provided a unique opportunity to understand the impact of jury diversity on trial outcomes. One study showed that under the nonunanimous jury verdict system, "[B]lack jurors [were] significantly overrepresented among those jurors casting ballots for 'not guilty' verdicts while white jurors [were] significantly underrepresented" in this group. Frampton, *supra*, at 1622. And Black defendants were more likely to be convicted by a nonunanimous verdict, meaning "one or two jurors still had reasonable doubts." *Id.* at 1640. Our state's Gender and Justice Commission has also highlighted research showing that "juries with jurors of color were less punitive against Black and Latinx defendants than all-white juries." 2021 Gender Justice Study 134. Thus, while alterations to the *Batson* framework do not draw lines around a specific class of defendants, they do serve to protect defendants of color in particular from disproportionate punishment. Such rules are designed to place convictions that are influenced in whole or in part by the defendant's race categorically out of reach. In this way, they are partly substantive.

Moreover, because discrimination in jury selection does not affect only the individual criminal defendant and their trial, rules regulating jury selection cannot be merely procedural. While it is true that when the State discriminates in jury selection, "the threat to the accuracy of the trial is significant and unacceptable," *Allen*, 478 U.S. at 264 (Marshall, J., dissenting), it is also

18

No. 54167-0-II

true that when the State discriminates in jury selection, it commits an additional harm and "unconstitutionally discriminate[s] against the excluded juror," *Batson*, 476 U.S. at 87; *see also Jefferson*, 192 Wn.2d at 229 ("We need to do better to achieve the objectives of protecting litigants' rights to equal protection of the laws *and* jurors' rights to participate in jury service free from racial discrimination." (emphasis added) (footnote omitted)). The harm to the struck juror is separate and distinct from the harm of an inaccurate conviction.

And the harm further "extends beyond that inflicted on the defendant and the excluded juror to touch the entire community." *Batson*, 476 U.S. at 87. When the State discriminates in jury selection, it "undermine[s] public confidence in the fairness of our system of justice." *Id.*; *see also Meredith*, 178 Wn.2d at 188 (González, J., dissenting) ("If people are excluded from jury service because of color or creed, we risk eroding faith in the justice of our democracy."). "The jury trial is not only the right of the accused[;] it also further assures governance by the people." *Evans*, 154 Wn.2d at 445. Therefore, when we alter the rules used to combat racial discrimination in jury selection, the impact of that alteration extends well beyond the manner for determining guilt in any individual case.

Racial bias is "a familiar and recurring evil" that "implicates unique historical, constitutional, and institutional concerns." *Peña-Rodriguez v. Colorado*, 580 U.S. 206, 137 S. Ct. 855, 868, 197 L. Ed. 2d 107 (2017). And the right to a fair trial by an unbiased jury is fundamental, impacting the core of our justice system. Accordingly, rules addressing racial bias in jury selection, though they necessarily involve procedural mechanisms, must be viewed as fundamentally protective of substantive rights.

No. 54167-0-II

The idea that some constitutional rules may be substantive in nature but require procedural mechanisms is not a novel one. In *Ali*, the Supreme Court explained that the rule announced in *Houston-Sconiers* was substantive because it put a category of punishments "beyond courts' authority to impose"—adult standard range sentences for juveniles with diminished culpability. 196 Wn.2d at 239. However, *Houston-Sconiers* also "announced a procedural component as a mechanism to protect the substantive rule" when it required that trial courts exercise discretion and meaningfully consider youthfulness when sentencing. *Id.* at 240. The Supreme Court reasoned that without this procedural mechanism, the substantive protection "ceases to exist." *Id.* But this "does not transform *Houston-Sconiers*'s substantive rule into a procedural rule." *Id.*; *see also Montgomery*, 577 U.S. at 210 (rejecting an argument that "conflate[d] a procedural requirement necessary to implement a substantive guarantee with a rule that 'regulate[d] *only* the manner of determining the defendant's culpability'" (second alteration in original) (some emphasis added and some omitted) (quoting *Schriro v. Summerlin*, 542 U.S. 348, 353, 124 S. Ct. 2519, 159 L. Ed. 2d 442 (2004))).

*Erickson* and *Jefferson* necessarily announced rules with "procedural component[s]" because without more rigorous scrutiny of our jury selection procedures, the substantive guarantees of our constitutional rights to an impartial jury trial, equal protection, and due process of law would "cease[] to exist." *Ali*, 196 Wn.2d at 240. That reality does not preclude these rules from being categorized as substantive. Because the rules announced in *Erickson* and *Jefferson*

20

No. 54167-0-II

governing jury selection are at least partly substantive, we conclude Rhone's PRP falls within the

exception to the one year time bar under RCW 10.73.100(6).[7]

## II. SUCCESSIVE PETITIONS

Even though we conclude Rhone's PRP is timely, we must transfer it to the Supreme Court

for review if it is a successive petition that raises new grounds for relief. *See In re Pers. Restraint*

*of Bell*, 187 Wn.2d 558, 562, 387 P.3d 719 (2017). Rhone argues his PRP is "not a successive

petition because no court has previously considered the merits of [his] arguments." PRP at 7; *see*

*also* Br. of Pet'r at 5. This claim confuses the definition of a "successive petition" with the

definition of "similar relief" under RAP 16.4(d). Rhone has previously filed PRPs, including one

where Rhone argued that *Erickson* and *Jefferson* constituted significant changes in the law that

were material to his robbery conviction and should be applied retroactively. Accordingly, this

---

[7] We recognize the United States Supreme Court has consistently refused to apply new constitutional rules affecting juries retroactively, despite the "momentous and consequential" nature of those rules. *Edwards v. Vannoy*, ___ U.S. ___, 141 S. Ct. 1547, 1559, 209 L. Ed. 2d 651 (2021). We also recognize our ability to take a different path under state law. *See id.* at 1559 n.6 (limiting the opinion's application to federal collateral review); *see also, e.g.*, *State v. Waldron*, 2021-0512, p. 9-10 (La. App. 4 Cir. 1/24/22), 334 So.3d 844, 850 ("But rather than simply follow, or abandon, *Teague* in determining retroactivity, this Court takes a nuanced approach to consider this particular rule of criminal procedure under Louisiana law and within Louisiana's history."); *State v. Sandifer*, 54,103, p. 14 (La. App. 2 Cir. 12/15/21), 330 So.3d 1270, 1278-79 (Hunter, J., concurring) (insisting the rule prohibiting nonunanimous jury verdicts should apply retroactively under state law because of "the racial bias at the root of the nonunanimous jury provision" and "the fundamental nature of the right to jury trial"). We also recognize that "the Washington Constitution provides greater protection for jury trials than is provided in the federal constitution." *State v. Hicks*, 163 Wn.2d 477, 492, 181 P.3d 831 (2008).

No. 54167-0-II

petition is successive. But we agree with Rhone that the merits of his claim have not previously been considered. Therefore, we must transfer his petition to the Supreme Court.[8]

"If a person has previously filed a [PRP], the court of appeals will not consider the petition unless the person certifies that [they have] not filed a previous petition on similar grounds, and shows good cause why [they] did not raise the new grounds in the previous petition." RCW 10.73.140. If we determine the petitioner has "previously raised the same grounds for review," we must dismiss the petition. *Id.* However, this statutory bar to successive petitions applies only to the Court of Appeals. *In re Pers. Restraint of Martinez*, 171 Wn.2d 354, 362, 256 P.3d 277 (2011).

RAP 16.4(d) governs successive petitions more generally. It provides, "No more than one petition for similar relief on behalf of the same petitioner will be entertained without good cause shown." RAP 16.4(d). "A successive petition seeks 'similar relief' within the meaning of RAP 16.4(d) if it raises matters that have been previously heard and determined on the merits." *Bell*, 187 Wn.2d at 563. In *Bell*, the petitioner had raised the same claim in prior petitions, but their claim had not been heard or determined on the merits because the Court of Appeals dismissed the prior petitions—including one dismissal based on a violation of the mixed petition rule. *Id.* at 564, 564 n.1. The Supreme Court therefore considered the petitioner's claim to be "new" for purposes of RAP 16.4(d). *Id.* at 564. "[T]here is no good cause prerequisite for transfer to [the Supreme Court] of a petition raising *new* grounds for relief." *Id.* at 563.

Like the petitioner in *Bell*, Rhone has previously raised a claim that recent changes in our state law framework for applying *Batson* are significant, material to his conviction, and should be

---

[8] The State's brief does not address whether Rhone's PRP is a successive petition that requests similar or new relief.

No. 54167-0-II

applied retroactively. But we dismissed that PRP under the mixed petition rule, and the Supreme Court denied review. *See Rhone* IV, No. 51517-2-II, slip op. at 13 ("We accordingly do not address Rhone's remaining claims related to his *Batson* challenge."); Ruling Den. Review, *In re Pers. Restraint of Rhone*, No. 98109-4, at 4 n.2 (Wash. May 20, 2020) ("I do not consider the change in law issue properly raised here."). Rhone's current claim has not been previously heard or determined on the merits. We therefore conclude that Rhone's PRP is successive but raises a new ground for relief for purposes of RAP 16.4(d). Accordingly, having determined the petition is timely, we transfer it to the Supreme Court for review.

CONCLUSION

We conclude Rhone's PRP is timely but successive. We transfer it to the Supreme Court for review.

Glasgow, C.J.

I concur:

Veljacic, J.

No. 54167-0-II

Maxa, J. (dissenting) – I fully appreciate the majority's interest in providing a remedy in long-past cases in which the use of peremptory challenges may have violated our Supreme Court's new rules for applying *Batson* in *City of Seattle v. Erickson*, 188 Wn.2d 721, 734, 398 P.3d 1124 (2017) and *State v. Jefferson*, 192 Wn.2d 225, 249, 429 P.3d 467 (2018). And I completely agree with the majority's excellent discussion of the pernicious effects of historical racial discrimination in jury selection. As our Supreme Court has noted, "Racial discrimination in the qualification or selection of jurors offends the dignity of persons and the integrity of the courts, and permitting such exclusion in an official forum compounds the racial insult inherent in judging a citizen by the color of his or her skin." *State v. Saintcalle*, 178 Wn.2d 34, 42, 309 P.3d 326 (2013) (lead opinion).

However, the majority opinion simply is inconsistent with the framework adopted by our Supreme Court for evaluating when significant changes in the law can be applied retroactively.

Under RCW 10.73.090(1), a petitioner generally must file a PRP within one year after a judgment becomes final. Under RCW 10.73.100(6), the one-year time limit is inapplicable when a PRP is "[1] based on a significant change in the law, [2] which is material to the conviction or sentence, and [3] sufficient reasons exist to require retroactive application of the changed legal standard." *In re Pers. Restraint of Ali*, 196 Wn.2d 220, 233, 474 P.3d 507 (2020), *cert denied*, 141 S. Ct. 1754 (2021). I agree with the majority that both *Erickson* and *Jefferson* constituted significant changes in the law that are material to Rhone's conviction. The third requirement is at issue here.

To determine whether a decision must be applied retroactively for purposes of RCW 10.73.100(6), our Supreme Court has directed that we apply the federal retroactivity analysis

24

No. 54167-0-II

established in *Teague v. Lane*, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989). *Ali*, 196 Wn.2d at 236. The Court in *Teague* held that "new constitutional rules of criminal procedure" will not be applied retroactively to cases that become final before the new rules are announced. 489 U.S. at 310. Therefore, a decision that announces a new rule of constitutional magnitude can be applied retroactively only if the new rule is substantive rather than procedural. *Ali*, 196 Wn.2d at 236.

The question here is whether *Erickson* and *Jefferson* announced substantive or procedural rules. A substantive rule " 'set[s] forth categorical constitutional guarantees that place certain criminal laws and punishments altogether beyond the State's power to impose.' " *Ali*, 196 Wn.2d at 237 (quoting *Montgomery v. Louisiana*, 577 U.S. 190, 201, 136 S. Ct. 718, 193 L. Ed. 2d 599 (2016)). Stated differently, "substantive rules alter 'the range of conduct or the class of persons that the law punishes.' " *Edwards v. Vannoy*, ___ U.S. ___, 141 S. Ct. 1547, 1562, 209 L. Ed. 2d 651 (2021) (quoting *Schiriro v. Summerlin*, 542 U.S. 348, 353, 124 S. Ct. 2519, 159 L. Ed. 2d 442 (2004)). In contrast, a procedural rule is "designed to enhance the accuracy of a conviction or sentence by regulating 'the *manner of determining* the defendant's culpability.' " *Ali*, 196 Wn.2d at 237 (quoting *Montgomery*, 577 U.S. at 201).

Here, the *Batson* rule and the modifications to that rule in *Erickson* and *Jefferson* do not prevent the State from enforcing certain laws or imposing certain punishments. They do not change who or what the law punishes. Instead, they affect only the manner in which a defendant's culpability is determined. The definitions of substantive and procedural rules in *Ali* compel the conclusion that *Erickson* and *Jefferson* announced procedural rules, not substantive rules. 196 Wn.2d at 237.

No. 54167-0-II

Older United States Supreme Court cases support the conclusion that decisions regarding *Batson* cannot be applied retroactively. In *Allen v. Hardy*, the Court concluded that "our decision in *Batson* should not be applied retroactively on collateral review of convictions that became final before our opinion was announced." 478 U.S. 255, 257-58, 106 S. Ct. 2878, 92 L. Ed. 2d 199 (1986). In *Teague*, the Court stated that *Allen* was dispositive and held that a defendant whose conviction was final before *Batson* was decided could not obtain the benefit of that decision. 489 U.S. at 294-96.

More recently in *Edwards*, the Court assumed without discussion that a case holding that criminal juries must be unanimous[9] was a rule of criminal procedure. 141 S. Ct. at 1553-55. Therefore, because the case announced a new rule, it could not be applied retroactively. *Id.* at 1155-56. If a rule concerning the unanimity of criminal juries is procedural, so must rules concerning the composition of criminal juries.

The majority asserts that although *Erickson* and *Jefferson* may have announced procedural rules, they should be applied retroactively because they implicated substantive rights. But the same could be said for almost all procedural rules. Under the majority's analysis, almost every significant change of the law would be applied retroactively and the third requirement under *Ali* would become meaningless.

As the majority notes, our Supreme Court in *Jefferson* stated that GR 37 – which adopted new rules for peremptory challenges of potential jurors potentially based on race and ethnicity – is "partly substantive" because it affects substantial constitutional rights. 192 Wn.2d at 248-49. But the court was analyzing whether GR 37 could be applied retrospectively because it was

---

[9] *Ramos v. Louisiana*, 590 U. S. ___, 140 S. Ct. 1390, 206 L. Ed. 2d 583 (2020).

26

No. 54167-0-II

curative, not whether a case announced a substantive or procedural rule for purposes of retroactivity under RCW 10.73.100(6).  *Id.*

I believe that existing precedent from our Supreme Court and well as from the United States Supreme Court compels the conclusion that *Erickson* and *Jefferson* announced procedural rules that cannot be applied retroactively.  Therefore, I would hold that RCW 10.73.100(6) is inapplicable and Rhone's PRP is time-barred.  Accordingly, I dissent.

_____
Maxa, J.